| | | |
|---|---|---|
| **E. RAY RAYNOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **ORDER** |
| **G4S SECURE SOLUTIONS (USA) INC.,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

THIS MATTER is before the Court on Defendants G4S Secure Solutions (USA) Inc. ("G4S"), Chuck Brock, Donald Zeccardi, Malcolm Burchett, Tifani Grusky, and Michael Nail's Motion for Summary Judgment (Doc. No. 27).

At the hearing on Defendants' Motion for Summary Judgment on December 11, 2017, the Court orally GRANTED Defendants' Motion as to claims one, four, five, six, seven, and nine and DENIED Defendants' Motion as to claims two and three. The Court indicated that it would memorialize its ruling in a detailed order. This order follows.

## I. PROCEDURAL BACKGROUND

Plaintiff filed this action on February 21, 2017, in Superior Court in Gaston County, North Carolina. (Doc. No. 1-1). Defendants subsequently removed the action to this Court. (Doc. No. 1). Defendants answered the Complaint on March 31, 2017 and moved for judgment on the pleadings on August 11, 2017. (Doc. Nos. 7, 14, 15). On October 4, 2017, the Court granted in part and denied in part Defendants' motion for judgment on the pleadings. (Doc. No. 23). The Court dismissed Plaintiff's claims against G4S of (1) intentional infliction of emotional distress;

(2) negligent infliction of emotional distress; (3) violation of North Carolina Constitution; (4) conspiracy to violate Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1985; and (5) claims under Title VII and section 1981 to the extent based on discrete discriminatory acts occurring before May 4, 2016. (Doc. No. 23). The Court also dismissed claims against Chuck Brock, Donald S. Zeccardi, Malcolm Burchett, Tifani Grusky, and Michael Nail (the "Individual Defendants") of (1) breach of contract; (2) wrongful discharge; (3) discrimination claims under 42 U.S.C. § 2000e, *et seq.*; and (4) violation of the North Carolina Constitution. (Doc. Nos. 23, 25).

Defendants moved for summary judgment on November 2, 2017. (Doc. No. 27). In accordance, with a modified briefing schedule to accommodate additional discovery ordered by the Court, Plaintiff filed a response on December 5, 2017, and Defendants replied on December 8, 2017. (Doc. Nos. 40, 41). The Court held a hearing on December 11, 2017. The Court orally ruled on the Motion and indicated that this detailed written order would follow.

## II. FACTUAL BACKGROUND[1]

G4S secures people, property, and assets. (See e.g., Henning Aff. ¶ 2). G4S provides services and products to its clients, including risk consulting and investigations, systems integration, security software and technology, and security professionals. (See e.g., Henning Aff. ¶ 2). Operations of G4S are divided into eight regions in the United States and further divided into local offices. (See e.g., Henning Aff. ¶ 3; Burchett Dep. 25:22-25). Employees in the Mid-Atlantic Region are generally divided into regional/overhead, billable, and temporary consultants. (Grusky Aff. ¶ 3).

---

[1] The Court recites the undisputed facts relevant to the Motion except where noted. See Fed. R. Civ. P. 56(a). The Court has not considered the Expert Report of Dr. Sarah Boyd (Doc. Nos. 27-1, 27-2, 40) or the unsigned affidavit of Michael Burchett (Doc. No. 27-8).

G4S employed Plaintiff, an African-American male, from on or about July 16, 2001, until August 26, 2016. Plaintiff worked in the Charlotte and Mid-Atlantic Region, starting as a trainer in G4S's office in Charlotte, North Carolina. (Burchett Dep. 35:6-11; Grusky Aff. ¶ 5; Clark Aff. ¶ 4). In 2002, Plaintiff began work as the Assistant Project Manager of the Bank of America Corporate Center in Charlotte, North Carolina, before becoming Operations Manager of G4S's office in Charlotte, North Carolina, in 2004. (Clark Aff. ¶ 4). In 2008, Plaintiff became the Manager of Field Support for the Mid-Atlantic Region. (Burchett Dep. 35:6-11; Clark Aff. ¶ 5).

While working as the Manager of Field Support, Plaintiff signed the 2014 Bonus Performance Contract given him by G4S. (Burchett Dep., Ex. 2). However, in September of 2014, Plaintiff's position as Manager of Field Support was eliminated, and he was reassigned to a position as Site Manager of the Bank of America Corporate Center in Charlotte, North Carolina. (Raynor Dep. 182:10-184:14; Burchett Dep. 223:20-224:24; Grusky Aff. ¶ 28). Plaintiff was later removed from his position as Site Manager at the Bank of America Corporate Center in 2015 (Burchett Dep. 239:15-20; Nail Dep. 51:18-21) after he (1) posted a list of disciplined employees in the break room (Raynor Dep. 213:7-22, Ex. 20, 21, 22; Burchett Dep. 230:6-231:3, 238:9-239:5) and (2) failed to promptly send updated post orders to a Bank of America Vice President (Raynor Dep. 207:8-209:21, 213:7-22; Ex. 25, 26; Burchett Dep. 233:11-17). Employees submitted complaints about the posting of disciplined employees through the G4S Secure Solutions Ethics and Compliance Hotline. (Raynor Dep., Ex. 20, 22). Plaintiff contends that he did timely send the updated post orders and that Bank of America did not ask for his removal. (Doc. No. 40 at 10-11).

Plaintiff continued to work for G4S but on various other accounts and assignments in the Mid-Atlantic Region. (Burchett Dep. 78:9-16, 112:14-113:1; Raynor Dep. 159:11-25). Around March 2016, the Mid-Atlantic Senior Regional Vice President Malcom Burchett offered Plaintiff two open positions with G4S, Operations Manager of the Cincinnati, Ohio office and Account Manager for Fifth Third Bank. (Burchett Dep. 25:251-3; 77:16-78:4, 83:6-7; Raynor Dep. 223:8-18). Plaintiffs contends these offers were illusory, and Plaintiff had not been informed that his current work for G4S was temporary. (Doc. No. 40 at 12). In response to these offers, Plaintiff gave Burchett a piece of paper with $120,000 written on it and stated words to the effect of "this is what it will take to get me." (Burchett Dep. 79:18-80:4; Raynor Dep. 225:17-226:6, 231:6-232:6). Plaintiff expected Burchett to make a counter offer, but he admits he never followed up with Burchett. (Raynor Dep. 229:10-13, 232:1-11). Burchett believed $120,000 was "inflated beyond a reasonable request." (Burchett Dep. 104:5-8). Plaintiff's assignments concluded May 31, 2016. (Raynor Dep. 237:10-14). Plaintiff did not apply to any positions in G4S, including the positions offered by Burchett. (Raynor Dep. 70:19-23, Ex. 6).

In June, Plaintiff asked Tifani Grusky by email about his vacation time. (Raynor Dep., Ex. 29; Grusky Aff. ¶ 42). Grusky informed Plaintiff that he had no vacation time and had a negative four-hour balance. (Raynor Dep., Ex. 29; Grusky Aff. ¶43).

Plaintiff appeared on the no-earnings report in July of 2016. (Grusky Aff. ¶ 44). The no-earnings report alerts G4S that an employee has no wages in the past month. (Grusky Aff. ¶ 44). Generally, G4S administratively terminates employees listed on the no-earnings report without prejudice to the employee's ability to reapply for employment with G4S. (Grusky Aff. ¶44; Nail Dep. 268:9-20). Lesa Bodine administratively terminated Plaintiff. (Nail Dep., Ex. 31). Then, a

severance agreement with four weeks of salary was prepared. (Burchett Dep. 175:14-178:14). Upper-level management employees, such as General Managers, received severance packages of a higher amount. (Burchett Dep. 187:23-204:9).

G4S's General Manager Michael Nail gave Plaintiff the Severance Agreement and General Release on July 20, 2016. (Nail Dep. 180:7-20). Plaintiff had concerns about the terms of the Agreement. (Raynor Dep. 249-50; Burchett Dep. 195-96, 249-50). Nail informed him that he could not answer his question, but he could submit the questions to Burchett in writing. (Raynor Dep. 248:1-250:12; Nail Dep. 184:3-188:22). As a result, on July 21, 2016, Plaintiff sent a written letter to G4S's Chief Human Resources Officer and Burchett. (Raynor Dep., Ex. 35; Dep. Burchett, Ex. 4). The letter outlined Plaintiff's concerns about the Agreement and used the terms "hostile" and "discriminatory." (Raynor Dep., Ex. 35; Burchett Dep., Ex. 4). Plaintiff contends the letter reports hostile and discriminatory treatment (Doc. No. 40 at 15); Defendants contend the letter describes the Agreement as "hostile" and "discriminatory" but failed to explain his reason for these allegations and to identify a protected class (Doc. No. 27-1 at 11). During the summer of 2016, Plaintiff received a letter from G4S's President Drew Levine, thanking him for his fifteen years of service with G4S. (Burchett Dep., Ex. 6).

After Plaintiff refused the terms of the Severance Agreement, Plaintiff was administratively terminated on August 26, 2016. (See Burchett Dep. 110:17-21; 220:20-221:4; Grusky Dep., Ex. 26).

Despite knowing of the procedures to submit a complaint and G4S's policy, in his 15 years of employment, Plaintiff never utilized G4S's hotline to make a complaint of race discrimination and never submitted a complaint of race discrimination in accordance with G4S's harassment

policy.  (Raynor Dep. 117:19-118:20; 121:10-121:20).  Plaintiff, however, contends his July 21, 2016 letter complained of discrimination.  (Doc. No. 40 at 6).  Plaintiff filed a charge of discrimination with the EEOC on January 11, 2017, alleging discrimination from July 8, 2016 to August 26, 2016.  (Doc. No. 13-1).

### III. STANDARD OF REVIEW

On a motion for summary judgment, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party satisfies that burden, the non-moving party bears the burden of "set[ting] forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.11 (1986) (quoting Fed. R. Civ. P. 56(e)).  The moving and non-moving party must support their assertions that a fact is or is not genuinely disputed by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).  If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" with admissible evidence or explain how an admissible form of the evidence will be introduced at trial, "the court may: . . . (2) consider the fact undisputed for purposes of the motion; [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."

Fed. R. Civ. P. 56(e); see also Fed. R. Civ. P. 56(c); Mitchell v. Zia Park, LLC, 842 F. Supp. 2d 1316, 1321 (D. N.M. 2012).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court views all material factual disputes supported by admissible evidence in favor of the non-moving party and draws all reasonable inferences in favor of the non-moving party. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980); Anderson, 477 U.S. at 255.

## IV. ANALYSIS

### A. Title VII: Disparate Treatment and Retaliation

Title VII prohibits an employer from (i) discriminating against an employee on the basis of race, color, religion, sex, or national origin and (ii) discriminating against an employee for opposing an unlawful employment practice under Title VII or for involvement in a Title VII investigation, proceeding, or hearing. 42 U.S.C. §§ 2000e–2(a)(1), 2000e–3(a). Violations of Title VII for discrimination or retaliation may be proven by Plaintiff "either through direct and indirect evidence of retaliatory animus, or through the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 668 (1973)." Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015).

Under the burden-shifting framework, the plaintiff has the burden of setting forth a *prima facie* showing for discrimination or retaliation. McDonnell, 411 U.S. at 802; Foster, 787 F.3d at

250.  Then, the burden shifts to the defendant to show that its purportedly discriminatory or retaliatory action was in fact the result of a legitimate non-discriminatory or non-retaliatory reason, McDonnell, 411 U.S. at 802; Foster, 787 F.3d at 250 (citations omitted), by articulating a "justification that is legally sufficient to justify a judgment in his favor[,]" Venable v. Pritzker, No. GLR-13-1867, 2014 WL 2452705, at *13 (D. Md. May 30, 2014) (quoting Mereish v. Walker, 359 F.3d 330, 335 (4th Cir. 2004), aff'd, 610 F. App'x 341 (4th Cir. 2015).  Defendant "is not required to persuade [the Court] that the proffered reason was the actual motivation for [its] decision."  Mereish, 359 F.3d at 335.

After the defendant shows a legitimate non-discriminatory or non-retaliatory reason, "the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory."  Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016) (citations omitted).  If the plaintiff fails to produce evidence to show that the "proffered reasons . . . were pretextual or motivated by discriminatory animus as required by McDonnell Douglas, [the] claim fails" and summary judgment is appropriate.  Turner v. Danzig, 8 F. App'x 268, 270 (4th Cir. 2001) (citing Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)).  Even if the plaintiff demonstrates a prima facie case and sufficient pretext, however, the Supreme Court has explained that a defendant will still be entitled to judgment as a matter of law if "no rational factfinder could conclude that the action was discriminatory."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000); see also Waag v. Sotera Defense Sols., Inc., 857 F.3d 179, 192 (4th Cir. 2017) (holding that to survive a motion for summary judgment under the McDonnell Douglas framework, "the plaintiff must produce sufficient evidence to create a genuine dispute of

material fact such that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason" (citations omitted)). In other words, a plaintiff must demonstrate "a genuine dispute of material fact on the question of pretext sufficient to make [the defendant's] proffered justification a triable issue." Guessous, 828 F.3d at 217 (citations omitted).

However, ultimately at trial, a plaintiff must show that the proffered reasons were pretext for unlawful discrimination. Tsehaye v. William C. Smith & Co., 402 F. Supp. 2d 185, 197 (D.D.C. 2005) ("[R]elief under the law exists not when the defendant's proffers are merely *pretextual*, but rather when they are pretexts for *discrimination*."), aff'd, 204 F. App'x 901 (D.C. Cir. 2006). Thus, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

As Plaintiff's section 1981 claims are premised on the same conduct as the claims for disparate treatment and retaliation and are analyzed under the elements under Title VII, the Court considers them together. See e.g., Guessous, 828 F.3d at 216, 219, 221 (elements of section 1981 claim are the same as for claims under Title VII of retaliation, discrimination, and hostile work environment). Because the wrongful discharge claims are based on the same policy as Title VII and are based on the same conduct in this case, the Court also considers them together, applying the framework of Title VII. McCallum v. Billy Graham Evangelistic Ass'n, No. 3:09Cv381-RLV, 2012 WL 4756061, at *7 (W.D.N.C. Oct. 5, 2012) (citing Anderson v. Duke Energy Corp., No. 3:06cv399, 2008 WL 4596238, at *14 (W.D.N.C. Oct. 14, 2008)).

## 1. Disparate Treatment Claims

Plaintiff fails to make a prima facie showing for his disparate treatment claim. To establish a prima facie case of disparate treatment absent direct evidence, a plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010) (citations omitted).[2]

Defendants argue Plaintiff has failed to set forth evidence supporting the second, third, and fourth elements of a prima facie case of disparate treatment. (Doc. No. 27-1 at 21-22). However, regardless of whether Plaintiff has shown satisfactory job performance and an adverse act sufficient for a prima facie case, there is no evidence of a similarly-situated employee outside of Plaintiff's protected class of race. Under the McDonnell Douglas burden shifting framework,

> [P]laintiffs are required to show that they are similar in all relevant respects to their comparator. Such a showing would include evidence that the employees "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

Haywood v. Locke, 387 F. Appx. 355, 359 (4th Cir. 2010) (citations omitted); see also Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir. 2008) ("The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful."); Moore v. City of Charlotte, 754 F.2d 1100, 1107 (4th Cir. 1985) (holding that federal courts must assess "the gravity of the offenses on a relative scale" to determine if the employees are similarly situated).

---

[2] Plaintiff has not plead or argued that this is a discriminatory discharge case and has not presented evidence "that [his] position was filled by a similarly qualified applicant outside the protected class." King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (citations omitted).

In response, Plaintiff contends that Grusky was a similarly situated white employee. (Doc. No. 40 at 13, 22 (citing Grusky Dep. 80-91)). Specifically, Plaintiff argues that Grusky "turned down Mr. Burchett's suggested job opportunities and refused to relocate for advance placement with G4S" but "was never deemed to have constructively resigned[.]" (Doc. No. 40 at 20). However, as argued by Defendants, Grusky is incomparable to Plaintiff; she worked in administration (Grusky Aff. ¶ 4), not operations, like Plaintiff. (Doc. No. 41 at 3). Further, Plaintiff has not presented any evidence that Grusky engaged in similar conduct as Plaintiff. (Doc. No. 41 at 3). As evidenced by the deposition testimony, Grusky turned down suggested job opportunities in different circumstances. (Grusky Dep. 80-88). Specifically, when asked to talk about when Burchett had suggested she apply for positions with G4S, she testified:

> When - - I get bored easily. I need to be challenged. I need to not have the same monotonous routine every day. So he would say, you know, "This job may be something that you're interested in. You might want to keep your eye open for any openings." Or if something came up that I was interested in, he would tell me about it.

(Grusky Dep. 80:17-81:2). In contrast, it is undisputed that Plaintiff had been removed from his position as Site Manager at the Bank of America Corporate Center for his conduct and was working on other accounts and assignments at the direction of his superiors. (Raynor Dep. 159:11-25).

Plaintiff also argues, without listing any names or a citation, that "[o]ther positions held by white employees (*e.g.*, general managers) which Burchett claims were Plaintiff's 'peers', all received substantial severance packages of a year's salary (or at least a half a year's salary), even when they were actually discharged for misconduct[.]" (Doc. No. 40 at 23). However, as discussed by Defendants in their brief and response, Burchett's testimony is to the contrary. (Doc. No. 27-1 at 17, 21-23; Doc. No. 41 at 5-6). Several general managers received severance payments

equal to a one year or half a year's salary (Burchett Dep., 197:23-201:19), but he was not aware of any employee with similar duties, salary, and comparable circumstances as to Plaintiff (Burchett Dep. 202:14-203:12). Plaintiff, in contrast, had been a Site Manager, who reports directly to a General Manager (see Zeccardi Dep., Ex. 25), and when he received the Severance Agreement, Plaintiff had been removed from his position as Site Manager (Burchett Dep. 239:15-20; Nail Dep. 51:18-21). Burchett, however, did testify that employees with comparable salaries to Plaintiff had received larger severance packages, but they had worked for G4S 20 or 35 years, and severance had been due to an inability to keep on working or retirement. (Burchett Dep. 203:13-204:9). Plaintiff had only worked for G4S for 15 years, and Defendants have proffered other reasons for the Severance Agreement. Also, one of the employees with similar pay to Plaintiff that was awarded a larger severance was of Plaintiff's race. (Burchett Dep. 203:11-204:9). Without admissible evidence or an explanation of evidence forthcoming at trial in admissible form of a comparable employee outside of Plaintiff's protected class, Plaintiff has not made a showing of a prima facie case. Defendants are entitled to summary judgment on Plaintiff's disparate treatment claim and the related wrongful discharge and section 1981 claims.[3]

### 2. Retaliation Claims

To establish a prima facie case of retaliation, Plaintiff must show (1) protected activity; (2) adverse employment action; and (3) a causal connection between the protected activity and the materially adverse employment action. Guessous, 828 F.3d at 217. G4S contends Plaintiff has

---

[3] The parties have cited to evidence in the record that Plaintiff was not hired for Global Account Manager position, to which he applied in September of 2016, after his termination. (Doc. No. 27-1 at 18; Doc. No. 40 at 16-17). However, the Complaint does not allege a Title VII claim on account of a discriminatory refusal to hire. Defendants' Motion for Summary Judgment and Plaintiff's response also do not discuss a discriminatory refusal to hire claim. Given that the claim is not asserted in the Complaint, and therefore not before this Court, the Court does not consider it.

not shown any of these elements.  (Doc. No. 27-1 at 23-24).  For this claim as well, the Court need not consider whether Plaintiff has failed to put forth evidence supporting the element of an adverse action or a protected act because Plaintiff has not shown a causal connection between the purported protected acts and the purported adverse act.

"To satisfy the third element, the employer must have taken the adverse employment action because the plaintiff engaged in a protected activity."  Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir. 1998); see also Guessous, 828 F.3d at 217 ("Retaliation claims . . . require the employee to show 'that retaliation was a but-for cause of a challenged adverse employment action.'").  Because "an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."  Dowe, 145 F.3d at 657.  Therefore, "[a] lack of causation may be shown where the adverse action occurred before the claimant began to assert [his] rights, or before the employer learned of the protected activity."  Hill v. Panetta, No. 1:12-cv-350, 2012 WL 12871178, at *17 (E.D. Va. Oct. 4, 2012) (citing Am. Jur. Job Discrimination § 247).  An employer lacks knowledge "that the plaintiff engaged in a protected activity" if the plaintiff makes a "complaint of harassment or discrimination in general, without any connection to a protected class."  Mixon v. Charlotte-Mecklenburg Sch., No. 3:11-cv-228-MOC-DSC, 2011 WL 5075808, at *6 (W.D.N.C. Aug. 5, 2011) (citing Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011); Monk v. Potter, 723 F. Supp. 2d 860, 880 (E.D. Va. 2010), aff'd, Monk v. Donahoe, 407 Fed. App'x. 675 (4th Cir. 2011); Dowe, 145 F.3d at 657); see Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 108 (2nd Cir. 2011) (affirming summary judgment on retaliation claims where plaintiff's complaints "were generalized and therefore the Diocese

could not reasonably have understood that she was complaining of 'conduct prohibited by Title VII'"). Thus, where "the decision to terminate [the plaintiff] was made *before* the decision-makers knew about [plaintiff's] complaint[,]" plaintiff has not shown causation. Francisco v. Verizon South, Inc., 756 F. Supp. 2d 705, 726-27 (E.D. Va. 2010).

In this case, Plaintiff sent the July letter after he was first administratively terminated by Bodine and after Defendants had decided to terminate him and had given him the Severance Agreement. The July letter with the subject "Revoke Severance Agreement and General Release July 18, 2016," listed "Questions- from Severance Agreement and General Release," provided a "History of [Plaintiff] bringing in money to the company," and requested "a fair assessment of who I am and the quality of my work and the non-commensurate reward or disparate treatment and absence of recognition from G4S." (Raynor Dep., Ex. 35; Burchett Dep. 35). Although the terms "hostile" and "discriminatory" were used, the July letter did not mentioned any unlawful employment practice on account of any protected class. See generally 42 U.S.C. §§ 2000e-2(a), 2000e-3(a).

Plaintiff does not in his response clearly address Defendants' arguments or dispute the facts as it relates to this claim. (Doc. No. 40 at 24; Doc. No. 41 at 6). At best, Plaintiff argues that because Defendants knew Plaintiff was a member of a protected class, they "knew that [its] disparate treatment and hostile work environment were unlawful," and as a result "when Plaintiff objected [in his letter], they simply terminated his employment for no other legitimate reason." (Doc. No. 40 at 24). However, the protected classes of race, color, religion, sex, or national origin are universal, which would make any complaint a protected act. Such an interpretation would be contrary to Congress's "manifest desire not to tie the hands of employers in the objective selection

14

and control of personnel." <u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d 253, 259 (4th Cir. 1998) (quoting <u>Armstrong v. Index Journal Co.</u>, 647 F.2d 441, 448 (4th Cir. 1981)). Further, it is undisputed that Plaintiff never utilized G4S's hotline or submitted a complaint in accordance with G4S's policy to report unlawful employment practices. (Raynor Dep. 117:19-118:20; 121:10-121:20). Thus, Plaintiff's argument cannot establish that Defendants knew that Plaintiff's July letter was a grievance or protest against unlawful employment practices. Yet, even if the July letter is sufficient to provide Defendants notice of an unlawful employment practice, the July letter was received after G4S decided to terminate Plaintiff and had terminated him. <u>See</u> <u>Francisco</u>, 756 F. Supp. 2d at 726-27.[4] Therefore, Plaintiff has not shown any causal connection between these purported protected activities and a purported adverse action of his administrative termination. Hence, Defendants are entitled to summary judgment on Plaintiff's claim for retaliation and the related wrongful discharge and section 1981 claims.

### 3. Legitimate Non-Discriminatory Reasons and Rebuttal

Defendants also contends it had the following legitimate non-discriminatory reasons for its actions including: "(1) budget cuts; (2) Plaintiff's poor performance, (3) Plaintiff's refusal to accept multiple positions generously offered by Mr. Burchett, and (4) Plaintiff's failure to apply for available positions with G4S on his own, which ultimately resulted in Plaintiff remaining on the no-earning list for more than thirty days." (Doc. No. 41 at 7; Doc. No. 27-1 at 25). Particularly relevant to the Court's assessment of claims not barred as untimely are justifications three and four.

---

[4] Plaintiff has not argued that the G4S's adverse acts were causally linked to Plaintiff's September letter to G4S's Human Resources or his EEOC charge. The September letter and EEOC charge occurred not only after the decision to terminate and the delivery of the Severance Agreement but after the final administrative termination of Plaintiff on August 26, 2016.

"[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998) (citations omitted). "[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." Reeves, 530 U.S. at 148; see also Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279-80 (4th Cir. 2000) ("[I]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff."); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996) (holding that "plaintiff's own opinions and conclusory allegations do not have sufficient 'probative force to reflect a genuine issue of material fact'" to rebut the employers explanation for its act (citations omitted)). In other words, the inquiry for the court is whether the plaintiff has "met [his] summary judgment burden of demonstrating a genuine dispute of material fact on the question of pretext sufficient to make [the defendant's] proffered justification a triable issue." Guessous, 828 F.3d at 217.

Plaintiff characterizes all Defendants' reasons as "pretextual and patently false" but does not offer evidence to create a genuine issue of fact as to Defendants' rationales, especially as to Plaintiff's refusal of position offers and failure to apply to other positions, which resulted in him appearing on the 30 day no-earning list. (Doc. No. 40 at 23). Plaintiff disputes these rationales as pretext by citing Plaintiff's testimony that "Burchett never told Plaintiff his last position was 'temporary' and that his failure to apply for any position would be deemed a constructive

resignation." (Doc. No. 40 at 12 (citing Raynor Dep. 108, 242:14-244:3, 259:11-261:2)). Similarly, Plaintiff cites to his testimony that the pay was too low for these positions. (Doc. No. 40 at 12 (citing Raynor Dep. 145:23-147:2, 219:7-226:13)). Plaintiff also points to an email stating that Plaintiff was on the 100 day no-earnings report, instead of the 30 day report. (Doc. No. 40 at 13 (citing Bodine Dep., Ex. 2)). However, Plaintiff does not dispute or offer evidence to contradict that (1) he was removed from his position at the Bank of America Corporate Center; (2) Burchett offered him two open positions in March 2016; (3) he told Burchett it would take $120,000 for him to accept one of the positions; (4) Plaintiff's last day worked was May 31, 2016; (5) he showed up on the 30 day no-earnings report in July; and (6) that generally employees listed on the 30-days no-earnings report were terminated. Plaintiff also admits he did not apply to any positions prior to his termination. (Raynor Dep. 56:12-17, 70:19-23, Ex. 6). Plaintiff's testimony may evidence a breakdown in communication between G4S and Plaintiff, but Plaintiff's own assertions of discrimination here are "insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." Adams v. Trustees of Univ. of N.C.-Wilmington, 640 F.3d 550, 560 (4th Cir. 2011) (citing Williams, 871 F.2d at 456). Accordingly, Defendants are entitled to summary judgment for Plaintiff's failure to rebut Defendants' legitimate non-discriminatory or retaliatory reasons for its administrative terminations of Plaintiff.

### B. Title VII: Harassment or Hostile Work Environment

Plaintiff contends he has been subject to a hostile work environment since 2014 on account of the "cumulative effect of the following individual acts": (1) the elimination of his position as Regional Manager in 2014; (2) the denial of his 2014 bonus in the spring of 2015; (3) his removal

from his position as Site Manager for the Bank of America Corporate Center in August 2015; (4) Grusky using the "N" word to inform Plaintiff that a trainer was terminated for using the "N" word in his presentation; (5) the designation of him as a utility player or fixer without an identified job title in August 2015; (6) the denial of his vacation leave and pay in the summer of 2016; (7) the administrative termination of his employment in July 2016; (8) the offering of the Severance Agreement in July 2016; (9) the administrative termination of his employment in August 2016 after receiving his July letter; and (10) the letter from G4S's President congratulating him for his 15 years of service in late 2016. (Doc. No. 40 at 19-21).

Defendants first argue that any complaint of acts prior to May 4, 2016, are barred by the statute of limitations. (Doc. No. 27-1 at 19; Doc. No. 41 at 3). In these circumstances, the Court agrees.[5] As held by the Supreme Court in National Railroad Passenger Corp. v. Morgan, 536 U.S.

---

[5] The acts alleged before May 4, 2016 also fall outside the scope of the EEOC charge and are therefore barred. Individuals alleging discrimination must file an administrative charge with the EEOC before seeking judicial relief. See 42 U.S.C. § 2000e-5(e)(1). "[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (citing Davis v. North Carolina Dep't of Corr., 48 F.3d 134, 138-40 (4th Cir.1995)). Therefore, "[i]f the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005) (citations omitted). Here, Plaintiff's charge states that it concerns discrimination that took place at the earliest on July 8, 2016 and at the latest on August 26, 2016 and such discrimination constituted a continuing action. (Doc. No. 1-1). The particulars in the charge are:

    I. On July 16, 2001, I began working for G4S Secure Solutions USA as a Trainer and later promoted to Regional Operations Manager and reassigned as a Site Manager. I was an outstanding employee as evidence by numerous awards and "excellent" rated performance evaluations.

    II. Without previous notice or warning, on July 20, 2016, my General Manager presented me with a "Severance Agreement and General Release" letter. On or about August 8, 2016, the Regional Vice President told me that the "Severance Agreement and General Release" letter was not for me. I was the oldest employee in my group. I was discharged on August 26, 2016.

    III. I have been discriminated against on the basis of my Race (Black/African American), Sex (male), and subject to retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended. Also I believe I was discriminated against because of my Age (40+), in violation of the Age Discrimination Employment Act of 1967, as amended.

(Doc. No. 1-1). Therefore, although any investigation of this charge could include harassment given Plaintiff's indication that this was a continuing action as previously found by the Court (Doc. No. 23 at 6), conduct or acts, especially discrete acts, nearly a year prior to the earliest alleged date of discrimination and unrelated to the Severance Agreement would not fall within the scope of a natural investigation. See Chacko, 429 F.3d at 509-10; Dennis v. Cty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (holding that claims were barred where "EEOC complaint did not address

101 (2002), a plaintiff's charge as to a discrete act is timely only if *that* discrete act occurred 180 days prior to the filing of the charge. Id. at 113-14. The Supreme Court, therefore, held "that a time-barred discrete act claim remains time-barred even if it is part of a series of related actions, some of which occurred during the limitations period." Guessous 828 F.3d at 222 (citing Morgan, 536 U.S. at 113). Thus, "the continuing-violation doctrine cannot be used to pursue claims challenging time-barred discrete acts." Id.

When assessing a hostile environment claim, the court, therefore, must consider "whether the untimely acts [alleged to support the claim] are discrete such that they could, and should, have been previously brought or whether they are part of an ongoing pattern of harassing conduct, which, independently, would have been inactionable." Repasky v. Pfizer, Inc., No. 2:12-cv-03331-RMG-BHH, 2013 WL 6054461, at *4 (D. S.C. Nov. 15, 2013). A discrete act "occur[s] on the day that it 'happened.'" Nat'l R.R. Passenger Corp., 536 U.S. at 110. To be actionable, a discrete action must be an adverse action, which "'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (citing James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir.2004)); see R.R. Passenger Corp., 536 U.S. at 114 (holding each discrete acts of discrimination and retaliation "constitutes a separate actionable 'unlawful employment practice'"). Discrete adverse employment action "include[] discharge, demotion, decrease in compensation, loss of job title or supervisory responsibility, reduced opportunities for promotion, or other conduct that had a significant detrimental effect." Gurganus v. Beneficial N.C., Inc., 25 F. App'x 110, 112 (4th Cir. 2001) (citing Boone v. Goldin, 178 F.3d 253, 255-56 (4th Cir.1999)); Nat'l R.R. Passenger Corp.,

---

any question of discrimination in hiring, training, or promotion"); Taylor v. Va. Union Univ., 193 F.3d 219, 239 (4th Cir. 1999) (holding claims barred where allegations, even liberally construed, where too vague).

536 U.S. at 111 (recognizing that discrete unlawful practices for an employer include: "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" (quoting 42 U.S.C. § 2000e-2(a)); see also id. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify."); see also Holland, 487 F.3d at 219 ("The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action. There must be some significant detrimental effect and absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." (internal citations and quotation marks omitted)).

In contrast, hostile environment claims or harassment involve "repeated conduct"; an unlawful employment practice in this context "cannot be said to occur on any particular day" and "a single act of harassment may not be actionable on its own." Nat'l R.R. Passenger Corp., 536 U.S. at 115. Examples of harassing racial conduct, as listed in the EEOC Compliance Manual, include "offensive jokes, slurs, epithets or name calling, physical assaults or threats, intimidation, ridicule or mockery, insults or put-downs, offensive objects or pictures, and interference with work performance." EEOC Compliance Manual, No. 915.003, § 15 (April 19, 2006), available online at https://www.eeoc.gov/policy/docs/race-color.html#VIIA1 (last viewed on Dec. 13, 2017). See Nat'l R.R. Passenger Corp., 536 U.S. at 110, n. 6 (noting that the EEOC's interpretive guidelines are entitled to respect under Skidmore v. Swift & Co., 323 U.S. 134 (1944)).

Here, Plaintiff has alleged several acts that occurred prior to May 4, 2016.[6] First, Plaintiff alleges that his position as Regional Manager of Field Support was eliminated in 2014, and he was demoted to Site Manager, but that his position was filled by another white employee, albeit with the title of Director of Field Support. (Doc. No. 40 at 20). As the elimination of the position and demotion occurred on the day it happened, rather than occurring after a pattern of acts that amounted to harassment, this act is discrete. Also, as admitted by Plaintiff, the act had an adverse effect—he was demoted. Gurganus, 25 F. App'x at 112 (recognizing demotion as an adverse act). Therefore, this is an untimely actionable discrete act that cannot be considered when assessing liability for harassment.

Second, Plaintiff alleges the denial of his contractual 2014 bonus in the spring of 2015 support his harassment claim. (Doc. No. 40 at 20). Here, as well, the act occurred when the regional bonuses where distributed in the spring of 2015 to other white regional employees but not to Plaintiff. The denial of contractually owed compensation in the form of wages or a bonus, clearly is detrimental to an employee. See generally Bazemore v. Friday, 478 U.S. 385, 395 (1986) ("Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII . . . ."). Therefore, this allegation also cannot be considered when assessing liability for harassment because it is an untimely actionable discrete act.

Third, Plaintiff contends his removal from his position as Site Manager for the Bank of America Corporate Center in August 2015 and the designation of him as a utility player or fixer without an identified job title in August 2015 also supports a claim for harassment. (Doc. No. 40

---

[6] Plaintiff has not argued that the doctrines of waiver, estoppel, or equitable tolling are applicable here. See R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (holding that the "time period for filing a charge is subject to equitable doctrines . . .").

at 20).  However, as previously discussed, reassignments that result in detriment to the plaintiff are actionable discrete acts.  Here, Plaintiff lost his status as an employee with a position in management, his ability to work for one of G4S's largest clients, and became an untitled employee without any defined responsibilities.  See Holland, 487 F.3d at 219 (recognizing a change in job title or level of responsibility as an adverse act).  Thus, this act is an untimely actionable discrete act that cannot be considered for assessing liability for harassment.

Next, the Court considers whether the remaining acts—four, six, seven, eight, nine, and ten—support a claim for discrimination based on a racially hostile work environment under Title VII.  See generally Nat'l R.R. Passenger Corp., 536 U.S. 101 (2002) (recognizing a claim for a racially hostile work environment under Title VII).  To survive summary judgment on a claim for hostile work environment or harassment based on race, the plaintiff must demonstrate that a reasonable jury could find plaintiff's harassment (1) unwelcome, (2) based on race, (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) a basis for imputing liability to plaintiff's employer.  See e.g., Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001).  Defendants argue Plaintiff's claims fail because "he was not subject to any unwelcomed conduct based on race," "there was no allegations of severe or pervasive actions," and "Plaintiff never complained of any alleged harassment."  (Doc. No. 27-1 at 19).

The Court agrees that Plaintiff has produced no evidence that the acts four, six, seven, eight, nine, and ten where on account of Plaintiff's race and were sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere.  Courts consider all the circumstances, which "may include the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 22 (1993). Here, the only evidence referencing any "offensive jokes, slurs, epithets or name calling, physical assaults or threats, intimidation, ridicule or mockery, insults or put-downs, offensive objects or pictures, and interference with work performance" is act four. EEOC Compliance Manual, No. 915.003, § 15 (April 19, 2006), available online at https://www.eeoc.gov/policy/docs/race-color.html#VIIA1 (last viewed on Dec. 13, 2017). As summarized by Plaintiff in his response,

> On one occasion, Grusky, white, told Plaintiff that a trainer for G4S has been terminated from the site where they were assigned for using the "N" word during his presentation. In the course of her explanation, she actually used the word, and Plaintiff told her not to use that word, even by means of explanation. [Plaintiff] did not report the incident and Grusky refrained from using the word again in his presence.

(Doc. No. 40 at 20 (citing Raynor Dep. 169-173)). Although any use of the "N" word is an "unambiguously racial epithet," Spriggs, 242 F.3d at 185, the "mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." Harris, 510 U.S. at 21 (internal citations and quotation marks omitted) (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). Even as summarized by Plaintiff, the circumstances of the use of the racial epithet were not objectively or subjectively "physically threatening or humiliating" or "sever[e.]" Grusky used the racial epithet to explain a problem that had arisen while Grusky and Plaintiff worked on the Cincinnati project. Plaintiff also admits the use of the racial epithet only occurred once, and he never reported the incident.

Unlike other cases, Plaintiff has not presented evidence of a history of typical harassing acts like name calling, threats, and slurs that lead to a tangible employment action, like Plaintiff's termination.  Faragher v. City of Boca Raton, 524 U.S. 775, 808 (1998) (holding that no affirmative defense to harassment is available "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment"); see also Guessous, 828 F.3d 208 (history of disparaging conduct related to plaintiff's religion and ethnicity from decision-maker before termination).  Without such conduct or similar conduct suggesting racial animus or a disparity in treatment with others outside the protected class, there is no evidence to suggest the acts are on account of race.  In this case, the Court has already concluded that many of these tangible acts fail to support a disparate treatment claim under Title VII.   Additionally, Plaintiff admits he never made any complaint of racial harassment in accordance with G4S policy despite knowing the procedures to submit a complaint.[7]  (Raynor Dep. 117:19-118:20; 121:10-121:20).

Further, the denial of his vacation leave, discontinuance of temporary assignments, termination for no earnings and lack of work for his skill set or experience, offering of the Severance Agreement, the final termination in August of 2016, and the letter recognizing his 15 years of service do not, combined with act four, "clear [the] high bar [necessary] to satisfy the severe or pervasive test."  EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008).  Here,

---

[7] Defendants have offered undisputed evidence that Plaintiff did not complain of harassment or report a complaint under G4S policy.  Although this evidence would be relevant for an affirmative defense for racial harassment claims.  Defendants have neither argued that this affirmative defense, known as the Faragher/Ellerth affirmative defense, applies and have not offered evidence to prove both elements of the defense.  Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 265-66 (4th Cir. 2001); Diamond Auto Glass, 242 F.3d 179, 186 n. 9 (4th Cir. 2001) (holding that the defense applies to racial harassment and requires the employer to prove "(1) that it 'exercised reasonable care to prevent and correct promptly any . . . harassing behavior'; and (2) the plaintiff-employee 'unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.").

most of the conduct arose from Defendants winding to a conclusion Plaintiff's career with the company, either temporarily through administrative termination or permanently through a severance agreement. This is not a pleasant experience for any employee, but Title VII does not protect an employee from merely unpleasant experiences. As articulated by the Fourth Circuit, "[w]orkplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life." Id. Therefore, considering the totality of the circumstances, no reasonable jury could conclude that Defendants' conduct was severe or pervasive or that Defendants' conduct was on account of Plaintiff's race. As a result, Defendants are entitled to summary judgment on Plaintiff's claim for harassment/hostile work environment and the related claim under section 1981. See e.g., Guessous, 828 F.3d at 221 (elements of section 1981 claim are the same as for claims under Title VII for hostile work environment).

### C. 42 U.S.C. § 1985(3)

As raised by the Individual Defendants, the Supreme Court foreclosed section 1985(3) claims based on employment discrimination by private employers in Great American Federal Saving & Loan Association v. Novotny, 442 U.S. 366 (1979). See Bradley v. Balt. Police Dep.'t, 887 F. Supp. 2d 642, 648 (D. Md. 2012) (dismissing Section 1985 claim based on employment discrimination).

> It is true that a § 1985 (3) remedy would not be coextensive with Title VII, since a plaintiff in an action under § 1985 (3) must prove both a conspiracy and a group animus that Title VII does not require. While this incomplete congruity would limit the damage that would be done to Title VII, it would not eliminate it. Unimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985 (3).

Great Am. Federal Saving & Loan Ass., 442 U.S. at 378.  Plaintiff has not offered case law to the contrary or distinguished this case from Novotny.  Therefore, the Individual Defendants are entitled to summary judgment in their favor on the section 1985 claim.

### D. Intentional or Negligent Infliction of Emotional Distress

Plaintiff has not disputed that it voluntarily dismissed its claims of intentional or negligent infliction of emotional distress against the Individual Defendants and has not objected in his response or at the hearing to the entry of summary judgment in the Individual Defendants favor on these claims.  Therefore, the Individual Defendants are entitled to judgment as a matter of law in their favor.

### E. Wage and Hour Act and Breach of Contract

G4S contends Plaintiff was not entitled to a bonus under the 2014 Management Annual Bonus Plan because it was not signed, his position was eliminated, and awards are discretionary.  (Doc. No. 27-1 at 28).  However, as raised by Plaintiff, Burchett in his deposition admits that he has no reason not to believe he signed Plaintiff's Management Annual Bonus Plan for 2014 as he had done for other employees.  (Doc. No. 40:9-10; Burchett Dep. 165:6-9).  Also, the plain language of the Management Annual Bonus Plan does not support that bonuses were completely discretionary or that Plaintiff's reassignment resulted in his forfeiture of his bonus.  See Meehen v. Am. Media Int'l, LLC, 214 N.C. App. 245, 256, 712 S.E.2d 904, 911 (2011) (applying principals of contract construction to Employment Agreement for claim under N.C. Gen. Stat. § 95-25.7).  Under N.C. Gen. Stat. § 95-25.13(3), an employer may only cause a loss or forfeiture of bonus pay "if he has notified the employee of the conditions for loss or forfeiture in advance of the time when the pay is earned."  Kornegay v. Aspen Asset Grp., LLC, 204 N.C. App. 213, 228, 693 S.E.2d 723,

735 (2010) (citing <u>Narron v. Hardee's Food Sys., Inc.</u>, 75 N.C. App. 579, 583, 331 S.E.2d 205, 208, (1985)); <u>see</u> <u>also</u> <u>Morris v. Scenera Research, LLC</u>, 229 N.C. App. 31, 40-42, 747 S.E.2d 362, 368-69 (2013) (finding sufficient evidence to allow the matter of plaintiff's entitlement to a bonus under the defendant employer's policy to go to trial).

Here, the Management Annual Bonus Plan condition on forfeiture states:

Employees must be employed as of July 1 of the plan year and still be employed on the due date for payment in order to qualify for payment. However, where an employee resigns voluntarily or is dismissed in circumstances justifying summary dismissal before the due date for payment, s/he shall forfeit all entitlement to any unpaid bonus payments. Where s/he is dismissed or put on notice in circumstances not justifying summary dismissal, any bonus due will be paid on the due date and in accordance with the agreed performance criteria but reduced pro-rata to reflect the time employed during the financial year.

(Burchett Dep., Ex. 2). Defendants have not argued or shown with undisputed evidence that Plaintiff was not employed as of July 1 or that Plaintiff was dismissed in circumstances justifying summary dismissal. Therefore, there are material questions of fact, and summary judgment is not appropriate.

As raised by Plaintiff, there are also material questions of fact as to Plaintiff's entitlement to vacation leave. (Doc. No. 40 at 14-15). An email from G4S's Human Resources Director Kym Cross reflects her determination that Plaintiff was entitled to vacation leave. (Doc. No. 40-12 at 4). Therefore, G4S is not entitled to summary judgment in its favor on Plaintiff's breach of contract claim or Wage and Hour Act claim.

## V. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment (Doc. No. 27) is GRANTED on Plaintiff's claims one, four, five,[8] six, seven, and nine, and DENIED on Plaintiff's second and third claim for the reasons set forth herein. Summary Judgment is entered in favor of G4S on claims one, six, and nine, and summary judgment is entered in favor of the Individual Defendants[9] on claims four, five, six, seven, and nine.

IT IS SO ORDERED.

Signed: December 21, 2017

Frank D. Whitney
Chief United States District Judge

---

[8] The Court grants summary judgment on the abandoned/voluntarily dismissed claim of Negligent Infliction of Emotional Distress and does not consider the claim under 29 U.S.C. § 623 now asserted as the fifth cause of action. (See Doc. No. 43-3).

[9] As the Court granted Plaintiff's Motion to Amend Complaint to Conform to the Evidence (Text Only Order granting Doc. No. 43, Dec. 18, 2017), the Individual Defendants remain parties to this action. However, the Court will not require the Individual Defendants to attend the scheduled mediation in light of the Court's clarification at the hearing on December 11, 2017.