UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00160-FDW-DSC

| | | |
|---|---|---|
| E. RAY RAYNOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER AND AMENDED JUDGMENT |
| G4S SECURE SOLUTIONS (USA) INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

THIS MATTER is before the Court upon "Defendant G4S Secure Solutions (USA) Inc.'s Motion for Judgment as a Matter of Law, or in the Alternative Motion to Alter or Amend Judgment or for a New Trial" (Doc. No. 80), "Plaintiff's Motion for Judgment as a Matter of Law (Rule 50)" (Doc. No. 81), "Plaintiff's Motion for New Trial and for Relief from Judgment or Order Fed. R. Civ. P. 59(b), (e), and 60(b)" (Doc. No. 82), and "Plaintiff's Notice of Election of Remedies and Motion for Reasonable Attorney's Fees (and Allowable Costs) under N.C. Gen. Stat. § 1D-45 and Fed. R. Civ. P. 37" (Doc. No. 83).[1] These motions are now ripe for resolution.[2] The Court addresses each motion but not necessarily in the order filed.

## I. BACKGROUND

In the interests of judicial economy, the Court provides a general overview of the case here but summarizes the specific background relevant to the issues raised by the parties' motions in the analysis. This matter arises from the conclusion of Plaintiff E. Ray Raynor's ("Plaintiff") employment with Defendant in 2016. Defendant provides security services to clients, including

---

[1] In accordance with N.C. Gen. Stat. § 1D-20 and the Court's direction to brief the matter, Plaintiff elected the jury's award of punitive damages (Doc. No. 83).
[2] As reflected on the record, Defendant G4S Secure Solutions (USA), Inc. ("Defendant") declined to file a reply.

risk consulting and investigations, systems integration, security software and technology, and security professionals. Defendant employed Plaintiff from July 16, 2001 until August 26, 2016. After a five day trial, the jury found in Defendant's favor on Plaintiff's claims under the Age Discrimination in Employment Act ("ADEA") and for wrongful discrimination on account of his age in violation of North Carolina public policy. (Doc. No. 74). The jury found in Plaintiff's favor on Plaintiff's claim to entitlement to a bonus and pay for vacation time, paid time off, and/or extended leave under the North Carolina Wage and Hour Act ("NCWHA"). The jury awarded Plaintiff $6,434.80 for his bonus and $14,974.96 for his vacation time, paid time off, and/or extended leave. The jury did not find Plaintiff entitled to severance pay under the NCWHA. The jury found Defendant liable for punitive damages and awarded $64,347.52.

## II. ANALYSIS

### A. Standards of Review

#### 1. Motion for Judgment as a Matter of Law

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, a party that moved for judgment as a matter of law at trial may renew the request for judgment as a matter of law within twenty-eight days of the entry of judgment. The moving party must have moved under Rule 50(a) for relief on similar grounds to move after trial under Rule 50(b). See Fed. R. Civ. P. 50; Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008). Failure to move under Rule 50(a) and "apprise the district court of the alleged insufficiency of . . . [the] suit" results in waiver of that unraised insufficiency. Price v. City of Charlotte, 93 F.3d 1241, 1249 (4th Cir. 1996); see also Bridgetree, Inc. v. Red F. Mktg. LLC, No. 3:10-cv-00228-FDW-DSC, 2013 WL 443698, at *17 (W.D.N.C. Feb. 5, 2013).

A motion under Rule 50(b) "assesses whether the claim should succeed or fail because the evidence developed at trial was insufficient as a matter of law to sustain the claim." Belk, Inc. v. Meyer Corp., 679 F.3d 146, 155 (4th Cir. 2012). When considering a Rule 50(b) motion, the court cannot reweigh the evidence or consider the credibility of the witness and must view "all the evidence in the light most favorable to the prevailing party and draw all reasonable inferences in [the prevailing party's] favor." Konkel v. Bob Evans Farms, Inc., 165 F.3d 275, 279 (4th Cir. 1999) (citation omitted). Thus, a jury's verdict will withstand a motion under Rule 50 unless the court "determines that the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party." Tools USA and Equip. Co. v. Champ Frame Straightening Equip., Inc., 87 F.3d 654, 656-57 (4th Cir. 1996) (quoting Winant v. Bostic, 5 F.3d 767, 774 (4th Cir. 1993)); see also Konkel, 165 F.3d at 279. The court may allow judgment on the verdict, order a new trial, or direct entry of judgment as a matter of law. Fed. R. Civ. P. 50(b).

**2. Motion for New Trial**

Rule 59(a) provides that courts may grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Under this standard, "[a] new trial will be granted if '(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998) (citation omitted). In making this determination, courts may "weigh the evidence and consider the credibility of witnesses." Id. (citation omitted).

"[E]rrors in admitting or excluding evidence" are not grounds for a new trial "[u]nless justice requires[.]" Fed. R. Civ. P. 61. "A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and . . . [the] party, on the record: timely objects or moves to strike; and states the specific grounds, unless it was apparent from the context." Fed. R. Evid. 103(a)(1). An error is harmless and does not require a new trial if the court can "say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the errors.'" Taylor v. Va. Union Univ., 193 F.3d 219, 235 (4th Cir. 1999) (citations omitted). By focusing on "whether the error itself had substantial influence[,]" this analysis allows the court to distinguish between harmless errors and those impacting a substantial right. Id.

"A judgment will be reversed for error in jury instructions 'only if the error is determined to have been prejudicial, based on a review of the record as a whole.'" Abraham v. County of Greenville, 237 F.3d 386, 393 (4th Cir. 2001) (quoting Wellington v. Daniels, 717 F.2d 932, 938 (4th Cir. 1983)). Specific jury instructions "may not be judged in artificial isolation, but must be viewed in the context of the overall charge[,]" Noel v. Artson, 641 F.3d 580, 586 (4th Cir. 2011) (quoting Henderson v. Kibbe, 431 U.S. 145, 153 n. 10 (1977)), and "in light of the whole record[,]" Abraham, 237 F.3d at 393 (citation omitted). "District courts are necessarily vested with a great deal of discretion in constructing the specific form and content of jury instructions." Hardin v. Ski Venture, Inc., 50 F.3d 1291, 1293 (4th Cir. 1995) (citing Price v. Glosson Motor Lines, Inc., 509 F.2d 1033, 1036 (4th Cir. 1975)). "Instructions will be considered adequate if construed as a whole, and in light of the whole record, they adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the [objecting] party."

Gentry v. E. W. Partners Club Mgmt. Co. Inc., 816 F.3d 228, 233 (4th Cir. 2016) (quoting Bunn v. Oldendorff Carriers GmbH & Co. KG, 723 F.3d 454, 468 (4th Cir. 2013)).

### 3. Motion to Alter or Amend Judgment

A Rule 59(e) motion to alter or amend a judgment "may only be granted in three situations: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012) (quoting Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir. 2007)). A Rule 59(e) motion "may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (citations omitted); see also Exxon Shipping Co., 554 U.S. at 485 n.5.

### 4. Motion for Relief from Judgment and Order

In the exercise of its discretion, a district court may grant relief from a final judgment, order, or proceeding, under Rule 60(b). McLawhorn v. John W. Daniel & Co., Inc., 924 F.2d 535, 538 (4th Cir. 1991) (citations omitted). "To prevail, a party must demonstrate (1) timeliness, (2) a meritorious defense [or claim], (3) a lack of unfair prejudice to the opposing party, and (4) exceptional circumstances." Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC, 859 F.3d 295, 299 (4th Cir. 2017) (citing Dowell v. State Farm Fire & Cas. Auto. Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993)); see also Boyd v. Bulala, 905 F.2d 764, 769 (4th Cir. 1990) ("Under all the provisions of Rule 60(b), a threshold condition for granting the relief is that the movant demonstrate that granting that relief will not in the end have been a futile gesture, by showing that

she has a meritorious defense or claim."); McLawhorn, 924 F.2d at 538 (holding remedy "is only to be invoked upon a showing of exceptional circumstances" (quoting Compton v. Alton Steamship Co., 608 F.2d 96, 102 (4th Cir. 1979)). Then, the party "must satisfy one of the six specific sections of Rule 60(b)." Wells Fargo Bank, 959 F.3d at 299 (quoting Dowell, 993 F.2d at 48). The specific reasons for relief under Rule 60(b) are:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

With these standards in mind, the Court turns to the parties' motions.

### B. Defendant's Motion for Judgment as a Matter of Law

Defendant moves for judgment in its favor on several grounds for the first time. First, Defendant contends "the weight of evidence" does not support the jury's award of a bonus under the 2014 Management Annual Bonus Plan for violation of the NCWHA because the jury found that G4S did not breach the 2014 Management Annual Bonus Plan. (Doc. No. 80-1 at 3). Second, Defendant submits that insufficient evidence supports the jury's award of vacation time. (Doc. No. 80-1 at 11-12). Third, Defendant reasons the award of punitive damages fails because "Plaintiff failed to prove by clear and convincing evidence, or even any evidence, the existence of fraud, malice, or willful or wanton conduct, and did not prove by the greater weight of the evidence that any such actions were related to any injury sustained by Plaintiff or that G4S's officers,

directors, or managers participated in or condoned such actions." (Doc. No. 80-1 at 9). Defendant, however, moved for judgment as a matter of law under Rule 50(a) on Plaintiff's claims under the ADEA and for wrongful discharge. Defendant did not move for judgment as a matter of law under Rule 50(a) on the grounds now asserted in its Rule 50(b) motion.

Requiring a party to raise an issue in a motion for judgment as a matter of law under Rule 50(a) prior to moving under Rule 50(b) is intended to "protect[] the Seventh Amendment right to trial by jury" and "ensur[e] that the opposing party has enough notice of the alleged error to permit an attempt to cure it before resting." Fed. Sav. Loan Ins. Corp v. Reeves, 816 F.2d 130, 138 (4th Cir. 1987) (citing Benson v. Allphin, 786 F.2d 268, 273 (7th Cir. 1986)). It also apprises the Court of the insufficiency such that "implicit in the party's failure to move for judgment as a matter of law is the belief that the evidence created a jury issue[.]" Bristol Steel & Iron Works v. Bethlehem Steel Corp., 41 F.3d 182, 187 (4th Cir. 1994) (quoting Little v. Bankers Life & Casualty Co., 426 F.2d 509, 511 (5th Cir. 1970)). "[T]he derelict litigant 'should not be permitted on appeal to impute error to the trial judge for sharing that view.'" Id. "Therefore, a 'court should not hesitate to enforce [the requirement of Rule 50] where the record shows a clear failure by counsel to observe it, no matter how meritorious may be the arguments of the insufficiency of evidence presented.'" Food Lion v. Capital Cities/ABC, 984 F. Supp. 923, 930 (M.D.N.C. 1997) (quoting Miller v. Premier Corp. of Del., 608 F.2d 973, 979 n.3 (4th Cir. 1979)). As the record clearly shows a failure to move for judgment as a matter of law on the grounds now raised, Defendant's arguments are waived.[3] The Court denies Defendant's motion for judgment as a matter of law.

---

[3] Further, Defendant waived any argument of inconsistent verdict by failing to object to the verdict before the Court discharged the jury. Rule 49(b)(3)(A) provides relief for inconsistent verdicts using a general verdict form. See Jones v. Southpeak Interactive Corp., 777 F.3d 658, 673 n. 5 (4th Cir. 2015) ("Rule 49(b) covers general verdicts, which are those 'by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions.'"

However, as compelled to consider the record for Defendant's other motions, the Court summarizes the evidence supporting the jury verdict in order to address the remaining motions.

### 1. Bonus Pay

Under the NCWHA, an employee's entitlement to a bonus turns on the employer's policy or practice. See N.C. Gen. Stat. § 95-25.7; 13 N.C. Admin. Code 12.0307(b), (c); N.C. Patterned Jury Inst.-Civ. 640.60; Cf. Morris v. Scenera Research, LLC, 747 S.E.2d 362, 369 (N.C. Ct. App. 2013) (finding evidence that Plaintiff earned the bonus under Defendant's bonus policy substantiated denial of motions for directed verdict). As summarized by Plaintiff, evidence of G4S's policy and practice of paying yearly bonuses to its employees was presented through exhibits and testimony from Plaintiff and other employees of Defendant. Plaintiff routinely received annual bonuses prior to 2014. No formalities for obtaining these bonuses applied. Plaintiff presented a written policy for the 2014 bonus and testimony that employees within his

___

(quoting Black's Law Dictionary 1696 (9th ed. 2009))). It allows the court to "approve . . . an appropriate judgment according to the answer[,]" "direct the jury to further consider its answers and verdict[,]" or "order a new trial." Id. at 674 (quoting Fed. R. Civ. P. 49(b)(3)). The Rule "promote[s] the efficiency of trials by allowing the original deliberating body to reconcile inconsistencies without the need for another presentation of the evidence to a new body." Austin v. Paramount Parks, Inc., 195 F.3d 715, 725 (4th Cir. 1999) (quoting White v. Celotex Corp., 878 F.2d 144, 146 (4th Cir. 1989)). Therefore, Rule 49(b) "obligates a party 'to object to any asserted inconsistencies in the response to jury interrogatories prior to the discharge of the jury[.]'" Id. (quoting White, 878 F.2d at 146). The moving party's failure to raise the inconsistency before the discharge of the jury bars a motion under Rule 49(b) regardless of the relief sought, new trial or entry of judgment. Id. at 726. Here, Defendant did not object to the verdict as inconsistent prior to discharge but now moves for judgment in its favor by alleging an inconsistent verdict. Given the Fourth Circuit's holding in Austin, Defendant is barred from seeking relief from the judgment now, regardless of what rule Defendant cites, Rule 49(b) or 50.

Additionally, the Court properly allowed judgment on the verdict because the general verdict and answers are consistent. Fed. R. Civ. P. 49(b)(2). "A jury verdict may be set aside and the case remanded for a new trial when it is not possible to reconcile the findings." Jones, 777 F.3d at 674-75 (quoting TransDulles Center, Inc. v. USX Corp., 976 F.2d 219, 227 (4th Cir. 1992)). If the "[v]erdict d[oes] not conflict with the jury instructions[,]" it is not inconsistent. See id. (citing TransDulles, 976 F.2d at 227-28). As set forth in the jury instructions, entitlement to a bonus under the NCWHA turns on the Defendant's policy or practice. See N.C. Gen. Stat. § 95-25.7; 13 N.C. Admin. Code 12.0307(b), (c); N.C. Patterned Jury Inst.-Civ. 640.60. Thus, unlike a breach of contract claim, the jury did not have to conclude that there was an enforceable contract or a breach of a contract.

Region received a bonus for 2014. Plaintiff testified to his qualifications for a bonus. Defendant through the testimony of Malcolm Burchett disputed Plaintiff's qualifications yet admitted a bonus committee—not Burchett—decides an employee's entitlement to a bonus.

## 2. Vacation Pay

Section 95-25.12 of NCWHA provides that "the employer shall give all vacation time off or payment in lieu of time off in accordance with the company policy or practice" and requires "notif[ication] in accordance with G.S. 95-25.13 of any policy or practice which requires or results in loss or forfeiture of vacation time or pay" to effectuate "loss or forfeiture." In this case, Defendant's written policy for paid time off for overhead personnel established that a 10-20 year employee received 224 hours (28 days) of paid time off ("PTO") on the anniversary of their employment. Defendant had employed Plaintiff for over ten years and considered July 16 Plaintiff's anniversary of employment. When employed as a Manager of Field Support for the Mid-Atlantic Region, Plaintiff was an overhead employee. Upon Burchett's removal of Plaintiff from this position and reassignment to the Bank of America Corporate Center as Site Manager, Burchett represented to Plaintiff that his salary and benefits would be maintained. Thus, despite his reassignment, Plaintiff continued to receive his same salary and benefits on account of Burchett.

An email from G4S's Human Resources Director Kim Cross dated July 12, 2016 stated that Plaintiff was currently assigned to the overhead benefits program, which usually includes overhead PTO. As a result, Cross had determined that Plaintiff had four hours of PTO as of July 10, 2016 and would have a total of 224 hours if terminated after July 16, 2016. The leave usage detail generated and produced by G4S lists the number -4.00 as the PTO balance. However, the

sum of the PTO recorded in the leave usage detail, which ranges from September 28, 2015 to February 26, 2016, totals 204 hours. As an overhead employee receives 224 hours annually, the use of only 204 hours of PTO would result in a leave balance of 20 hours. Defendant also administratively terminated Plaintiff after his July 16, 2016 employment anniversary. Both before and after administratively terminating Plaintiff on August 26, 2016, Defendant denied Plaintiff use of his PTO and refused to pay him for any remaining PTO.

### 3. Punitive Damages

To succeed on his claim for punitive damages, Plaintiff had to prove that Defendant is liable for compensatory damages and "by clear and convincing evidence" that fraud, malice, or willful or wanton conduct "was present and was related to the injury for which compensatory damages were awarded[.]" N.C. Gen. Stat. § 1D-15(a), (b). Here, the parties stipulated to, and evidence admitted supported, that Defendant's Senior Director of Administration for the Mid-Atlantic Region, Tifani Grusky informed Plaintiff on July 11, 2016 that he had no PTO. Yet, Grusky received an email from G4S's Human Resources Director Kym Cross dated July 12, 2016, stating that Plaintiff was assigned to the overhead benefits program which usually includes overhead PTO. Cross had determined that Plaintiff had four hours of PTO as of July 10, 2016 and would have a total of 224 hours if he was terminated after his anniversary of employment on July 16, 2016. Also, the leave usage detail admitted into evidence reflects that Plaintiff had only used 204 hours of his PTO, when the policy for the overhead benefit program provides that employees of 10-20 years are entitled to an allotment of 224 hours of PTO on their anniversary date. As stipulated by the parties and as testified by Burchett, Plaintiff, and others, Burchett made adjustments so Plaintiff's salary and benefits remained unchanged when his regional overhead

position was eliminated and he was assigned to a position as Site Manager at the Bank of America Corporate Center.  The parties further stipulated that Burchett continued to employ Plaintiff at the same rate of pay after his removal from the Bank of America site.  Nevertheless, in July, Defendant denied Plaintiff his requested PTO.  Yet, several days later and four days after his July 16, 2016 anniversary, Defendant had presented to Plaintiff a severance agreement reflecting $123.75 in pay for unused PTO.  This amount was equivalent to four hours of PTO for Plaintiff.  After Plaintiff turned down the severance agreement, Defendant did not pay Plaintiff for any vacation pay, paid time off, or extended leave balance, at any time despite the aforementioned evidence and Plaintiff's suit against Defendant.

### C. Defendant's Alternative Motion to Alter or Amend Judgment

Defendant seeks an alteration or amendment to the judgment because "[t]he awards of bonus pay, punitive damages, and vacation pay, as well as the admission of Plaintiff's Exhibit 79 into evidence are manifest injustices[.]"  (Doc. No. 80-1 at 14).  Defendant's arguments as to bonus pay, punitive damages, and vacation pay are mere reassertions of its arguments for judgment as a matter of law in its favor.  See Pac. Ins. Co., 148 F.3d at 403 (citation omitted). (See Doc. No. 80-1).  Merely disagreeing with the jury's verdict, which the Court has allowed by denying Defendant's motion for judgment as a matter of law, does not support a Rule 59(e) motion.  See Hutchinson v. Staton, 994 F.2d 1076, 1082 (4th Cir. 1993) (finding "mere disagreement does not support a Rule 59(e) motion" (citation omitted)).  Therefore, based on the evidence summarized previously, the Court cannot find a manifest injustice as to the jury's verdict in favor of Plaintiff on bonus pay, vacation pay, and punitive damages.

Additionally, the admission of Exhibit 79 was proper. Rule 1006 of the Federal Rules of Evidence provides that "[t]he proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Here, Plaintiff had admitted into evidence Defendant's policy of vacation time, paid time off, and extended leave bank, Defendant's payroll register for Plaintiff, and Defendant's leave usage detail for Plaintiff, all of which are admissible and voluminous writings, that substantiate the calculations set forth in Exhibit 79. Defendant's assertion for the exclusion of Exhibit 79 pursuant to Rule 403 of the Federal Rules of Evidence is made for the first time in Defendant's motion.[4] Not only is this objection untimely and, therefore, waived, but the Court cannot find undue prejudice. Defendant had access to all underlying documents supporting the calculations in the exhibits and Plaintiff's counsel on direct examination of Plaintiff walked through each of the calculations. Defendant had the opportunity to cross-examine Plaintiff and to rebut the evidence in the exhibit through testimony of witnesses it called on direct. Thus, the Court denies Defendant's request to alter or amend the judgment. There was no manifest injustice or clear error.

### D. Defendant's Alternative Motion for a New Trial

As Defendant's previous motions fail, the Court considers Defendant's request for a new trial. Defendant avers it was unduly prejudice by the Court excluding the testimony and expert report of Dr. Sara Boyd and extending additional time to Plaintiff. (Doc. No. 80-1 at 16-18). The Court disagrees.

Defendant merely alleges prejudice from the exclusion of Dr. Boyd's testimony and report without citing or explaining how the Court erred or how any prejudice was a miscarriage of justice.

---

[4] At trial, Defendant argued Exhibit 79 was an alternative verdict form, rendering admission inappropriate.

Therefore, the Court cannot find any prejudice or manifest injustice from the exclusion. The Court fully explained its holding in its Order on Plaintiff's Motion in Limine as to the report and testimony of Dr. Sara Boyd (Doc. No. 76), which is incorporated herein.

Defendant contends an extension of time granted to Plaintiff after his allotted 7.5 hours[5] expired amounted to undue prejudice against Defendant because Defendant took measures to stay within the 7.5 hour requirement. Defendant only complains that it may have spent more time on cross-examination and may have called Plaintiff during its case in chief. Yet, Defendant did not use all of the allotted 7.5 hours of time or request more time. The extension given to Plaintiff did not prevent Defendant from additional questioning of Plaintiff on direct or cross; of its 7.5 hours, Defendant had substantial time remaining after presenting its closing arguments. Therefore, on this record, the Court finds no prejudice, and even if there was prejudice, it was not undue.

### E. Plaintiff's Motion for Judgment as a Matter of Law

Although Plaintiff generally moved for judgment as a matter of law at trial on matters he had previously raised, Plaintiff declined to move for judgment as a matter of law under Rule 50(a) at trial on the grounds now asserted in Plaintiff's motion under Rule 50(b). (Doc. No. 81). Plaintiff has never before this motion contended he is entitled to judgment as a matter of law on his claim for breach of contract or severance pay under the NCWHA. Therefore, Plaintiff's arguments addressed herein are clearly waived, and Plaintiff's motion for judgment as a matter of law denied.[6]

---

[5] As discussed more fully in this Order, pursuant to its authority to run and maintain the courtroom and its schedule, the Court imposed on the parties a time limit of 7.5 hours to present their opening statements, direct examination, cross-examinations, and closing statements.

[6] As previously explained, any argument of inconsistent verdict has been waived, and the Court correctly found the verdict consistent. Additionally, a party "may not receive a double recovery under different legal theories for the same injury." Gordon v. Pete's Auto Serv. of Denbigh, 637 F.3d 454, 460 (4th Cir. 2011) (citations omitted); see also Smith v. Gulf Oil Corp., 79 S.E.2d 880, 885 (N.C. 1954).

**F. Plaintiff's Motion for New Trial**

Plaintiff requests an award of a new trial on several grounds. Plaintiff seeks a new trial on the claim of breach of contract and of violation of the NCWHA as to severance pay but does not substantiate his request. (Doc. Nos. 82, 82-1). The Court cannot find the verdict on these claims against the clear weight of evidence, based on false evidence, or a miscarriage of justice. A valid contract "requires an offer and acceptance in the exact terms and that the acceptance must be communicated to the offeror." Normile v. Miller, 326 S.E.2d 11, 15 (N.C. 1985); see also Rucker v. Sanders, 109 S.E. 857, 858 (N.C. 1921) ("An unaccepted offer is not a contract[.]"). Here, Plaintiff testified that he signed and emailed the document entitled "Bonus Performance Contract -2014" to his manager Michael Burchett, but Burchett could not recall receiving it or signing it. The jury weighed this conflicting testimony concerning Plaintiff's acceptance and found in favor of Defendant. The jury also found in favor of Defendant after weighing evidence that Defendant routinely discharged employees without severance pay. Those who received severance pay were also distinguishable from Plaintiff and received severance pay after execution of a severance agreement. In light of the record and Plaintiff's burden of proof, the Court declines to grant a new trial under Rule 59(e) on these claims and turns to Plaintiff's remaining assignments of error.

**1. Time Limits**

Although acknowledging the Court's "wide discretion to impose reasonable limits on the length of the direct and cross-examination of witnesses[,]" Plaintiff complains that the Court's imposition of time limits deprived Plaintiff of his right to a fair trial by jury. (Doc. No. 82-1 at 6 (citing Chandler v. FMC Corp., 619 N.E.2d 626, 629 (Mass. App. Ct. 1993) (citation omitted))). Essentially, Plaintiff argues the time limits imposed in this case were arbitrary; the award of equal

time limits for Plaintiff and Defendant improper; and the use of time limits unnecessary given the Court's other authority to exclude irrelevant or cumulative testimony and evidence. (Doc. No. 82-1 at 5-11).

It is undisputed that this Court has broad discretion to set time limits in matters before the Court. Rule 1 of the Federal Rule of Civil Procedure provides that the Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Rule 611(a) of the Federal Rules of Evidence states "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Given these provisions, numerous circuit courts and district courts have found courts have broad discretion to control and manage its trials in civil cases by setting time limits. See, e.g., Life Plus Int'l v. Brown, 317 F.3d 799, 807 (8th Cir. 2003); Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 609 (3rd Cir. 1995); Deus v. Allstate Ins. Co., 15 F.3d 506, 520 (5th Cir. 1994); McKnight v. GMC, 908 F.2d 104, 115 (7th Cir. 1990); Harris v. Marsh, 679 F. Supp. 1204, 1235 n.42 (E.D.N.C. 1987), rev'd in part on other grounds, 914 F.2d 525 (4th Cir. 1990). In so doing, courts have affirmed that the exhaustion of the time allotted does not entitled Plaintiff to a new trial. See Novey v. Heartland Home Fin., Inc., No. 06-cv-00031-MSK-BNB, 2008 WL 687361, at *8 (D. Co. Mar. 10, 2008) (finding no prejudice); see generally Arthrocare Corp. v. Smith & Nephew, Inc., 310 F. Supp. 2d 638, 672 (D. Del. Mar. 10, 2004) (denying motion for new trial), aff'd in part and rev'd in part on other grounds, 406 F.3d 1365 (Fed. Cir. 2005); see also Amarel v. Connell, 102 F.3d 1494, 1514-15 (9th Cir. 1996) ("To

overturn a jury verdict based on a party's failure to use its limited time for witness cross-examination would be to invite parties to exhaust their time limits without completing cross-examination, then appeal on due process grounds. Such a result would undermine the discretion of district courts to manage time during trials.").

In this case, the Court did not abuse its discretion by imposing time limits on the parties. The Court determined the time allocated to the parties after the Court addressed the summary judgment motions (Doc. No. 48), granted Plaintiff's motion to amend the complaint (Text-Only Order granting Doc. No. 43, Dec. 18, 2017), and considered the parties pre-trial submissions, including their exhibit and witness lists (see, e.g., Doc. No. 55). The Court had informed the parties at the summary judgment hearing on December 12, 2017 that it reserved the right to impose a chess clock to keep things moving. (Summary Judgment Hearing Tr. 45:17-19, Doc. No. 66). During calendar call on January 2, 2018, the Court imposed its time limits—a chess clock of 15 hours. The Court explained that this meant Plaintiff had 7.5 hours and Defendant had 7.5 hours. Time would run during opening, closing, direct examination, and cross examination but would not run during jury selection or objections. The Court also informed the parties that their case was the third case set for trial out of five calendared for that month, with an expected trial date of January 17, 2018. Plaintiff did not object to the imposition of chess clock or the amount of time. Plaintiff gave the Court no reason to believe the Court's decision inappropriate. None of Plaintiff's filings or statements indicated or substantiated that his case required more than 7.5 hours.[7] Plaintiff also

---

[7] Further, as previously noted by the Court, the parties had expected this case to take approximately three to five days. (Doc. No. 8 at 3). Although this statement was made before discovery, Plaintiff never informed the Court otherwise. Additionally, as a result of the Court's orders dismissing claims and five individual defendants, the matters before the Court were narrowed significantly even after Plaintiff amended his complaint. (See Doc. Nos. 23, 24, 25, 48, 64). Excluding jury selection, this was a five day trial.

did not object to Defendant receiving the same amount of time to present its case.  At trial, even

with only a few hours remaining of his allotted time, Plaintiff conceded his ability to call all his

remaining witnesses in the remaining time.  It was only after the Court called a recess to inform

Plaintiff that his time was about to expire that Plaintiff complained of prejudice.  Such timing is

telling; Plaintiff's own actions created any purported predicament.  As the record shows, Plaintiff

used the pre-set time allocated to him as he saw fit and appropriate.  Some may have allocated

their time differently, but by setting a time limit, this Court deferred to counsel's judgment as to

their allocation of their time.  As explained by other courts imposing time limits:

> It requires counsel to exercise a discipline of economy choosing between what is
> important and what is less so. It reduces the incidence of the judge interfering in
> strategic decisions. It gives a cleaner, crisper, better-tried case.

United States v. Reaves, 636 F. Supp. 1575, 1580 (E.D. Ky. 1986) (quoting Leval, From the Bench,

Litigation, at 8 (1985)).  If Plaintiff neglected to do this,[8] despite the ample notice from this Court,

any perceived disadvantage suffered by Plaintiff is of his own making.[9]  Additionally, the time

limitations did not impact the comprehension of the information for the jury or the judge.  A

---

[8] Plaintiff raises that counsel for Plaintiff and opposing counsel did not stipulate as to the admissibility of evidence.
The Case Management Order requires as a pretrial submission "A list of exhibits that each party may offer at trial
(except those offered solely for impeachment or cross-examination), numbered sequentially; a brief description of the
exhibit; any stipulations as to authenticity or admissibility; and the basis for any objections."  (Doc. No. 11).  The list
should be in the table format exemplified in the Case Management Order, which listed an Exhibit Number,
"Description," "Stipulation – Authenticity," "Stipulation – Admissibility," all of which were answered.  (Doc. No.
11).  Plaintiff's pretrial submission of exhibits left blank the boxes "Stipulation – Authenticity," "Stipulation –
Admissibility," and "Objections." It did not say yes or no in any of the blanks.  The Court informed the parties of time
allocations sufficiently before trial was set to begin, such that the parties could have discussed and stipulated prior to
trial and submitted new exhibit lists.  Counsel's admitted decision not to have a discussion with opposing counsel and
address these matters as set forth in the Case Management Order, especially in light of the time limit, to which he did
not object, does not bear on the propriety of the Court's time limitation. (Doc. No. 82-1 at 11).
[9] The Court also extended Plaintiff's time to accommodate his request to present the video deposition of Defendant's
Rule 30(b)(6) designee and granted him 30 additional minutes for cross examination and 30 additional minutes for
closing. Plaintiff did not object to this as insufficient.  Instead, after he used all his additional time, he objected.  At
no time did Plaintiff request an instruction to the jury to inform them of the time limits imposed, the additional time
limits granted Plaintiff, or the exhaustion of Plaintiff's time.

proceeding allowing an effective ascertainment of the truth before a jury was held.  Sims v. ANR Freight Sys., 77 F.3d 846, 849 (5th Cir. 1996); Reaves, 636 F. Supp. at 1580 (citing Fed. R. Evid. 611(a)).

Further, the fact that this Court could have taken a more interfering approach to counsel's production of evidence and examination of witnesses by raising the inadmissibility of irrelevant or cumulative evidence does not preclude this Court from imposing a chess clock nor make the imposition abusive.  See generally Duquesne Light, 66 F.3d at 609; Fed. R. Evid. 403.  Here, the Court provided Plaintiff the jury trial to which he was entitled under the United States Constitution and the North Carolina Constitution.  U.S. Const. Amend. VII; N.C. Const. Art. I, § 25; Colgrove v. Battin, 413 U.S. 149, 157 (1973) (noting the purpose of the jury trial in civil cases is "to assure a fair and equitable resolution of factual issues").  Counsel was provided reasonable notice of the chess clock, and the limitation imposed was not arbitrary but based on the case before the Court and this Court's years of practice on the bench and before the bench.  For these reasons and the reasons previously stated, the Court cannot find that the jury's verdict will result in a miscarriage of justice.  Thus, the Court declines to overturn the jury's verdict, relieve Plaintiff of the final judgment, and order a new trial.

### 3. Evidentiary Errors

Plaintiff's motion complains of this Court's management of the trial (Doc. No. 82), but Plaintiff does not address any of these alleged errors or explain why the Court's conduct was improper (Doc. No. 82-1).  Without citations or any explanation in Plaintiff's brief, the Court cannot entertain Plaintiff's grievances.

### 4. Jury Instructions

Plaintiff argues the Court improperly instructed or refused to instruct the jury on wrongful termination and punitive damages under North Carolina law. (Doc. No. 82-1 at 16-18). Yet as raised by Defendant, and uncontested by Plaintiff, Defendant did not object to the jury instructions on these grounds at the charge conference or after the instructions were read to the jury. See Fed. R. Civ. P. 51(c). The Court also finds Plaintiff's complaints meritless.

Plaintiff requested an instruction for wrongful termination under North Carolina common law that "objecting to discrimination and hostility is conduct protected by law[.]" (See Doc. No. 70 at 55). However, Plaintiff failed to cite any law that protects objecting to discrimination and hostility generally,[10] let alone a provision in a North Carolina statute or the North Carolina constitution establishing protection as a matter of public policy.

> In North Carolina, employment is generally terminable by either the employer or employee for any reason where no contract exists specifying a definite period of employment. Rucker v. First Union Nat'l Bank, 98 N.C.App. 100, 102, 389 S.E.2d 622, 624 (1990) (citation omitted). This is a bright-line rule with very limited exceptions. An at-will employee may not be terminated: "(1) for refusing to violate the law at the employers [sic] request, (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy." Ridenhour v. IBM, 132 N.C. App. 563, 568–69, 512 S.E.2d 774, 778 (1999) (internal citations omitted).
>
> . . . To prevail on a claim for unlawful termination in violation of public policy "a plaintiff must identify a specified North Carolina public policy that was violated by an employer in discharging the employee." Salter v. E & J Healthcare, Inc., 155 N.C. App. 685, 694, 575 S.E.2d 46, 52 (2003) (citation omitted).
>
> . . . [T]his [public policy] exception is applicable where (1) the public policy of North Carolina is clearly expressed within our general statutes or state constitution, or (2) potential harm to the public is created by defendant's unlawful actions. See Considine v. Compass Group USA, Inc., 145 N.C.App. 314, 321, 551 S.E.2d 179, 184 (2001); see also Amos v. Oakdale Knitting Co., 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992) . . . .

---

[10] The record also reflects that the jury found in favor of Defendant on Plaintiff's claim for retaliation under the ADEA, 29 U.S.C. § 623. (Doc. No. 74).

McDonnell v. Tradewind Airlines, Inc., 670 S.E.2d 302, 305-06 (N.C. Ct. App. 2009). Plaintiff also did not argue that such conduct would be contrary to public policy because of its potential harm to the public. Even if Plaintiff had, the Court would not be inclined to determine North Carolina's public policy for extension of public policy should come, "if at all, from North Carolina courts." Keener v. Universal Cos., 128 F. Supp. 3d 902, 917 (M.D.N.C. 2015) (quoting Mullis v. Mechs. & Farmers Bank, 994 F. Supp. 680, 688 (M.D.N.C. 1997)).

Plaintiff did not request the instruction he now seeks. Plaintiff now requests instructions for wrongful termination for "Defendant's intentional violation of the North Carolina Wage & Hour Act, Defendant's fraud/misrepresentation in presenting Plaintiff with a Severance Agreement and General Release; and/or Defendant's mixed motive for the discriminatory conduct and adverse employment decisions on the unlawful bases of age and/or race[.]" (Doc. No. 82 at 2; Doc. No. 82-1 at 16). See Fed. R. Civ. P. 51(a) (requiring "written request[] for the jury instructions it wants the court to give").[11] Plaintiff does not explain why his post-trial requests for instructions entitle him to a new trial. Therefore, the Court finds no error for which Plaintiff would be entitled to a new trial.

As to punitive damages, Plaintiff did not tender instructions on punitive damages with its pre-trial submission but subsequently moved after the close of evidence for an instruction during

---

[11] The Amended Complaint did not set forth a separate cause of action for wrongful termination. (See Doc. No. 64). The Court previously dismissed Plaintiff's claim for wrongful termination, asserted in his initial complaint, in its summary judgment order. (Doc. No. 48). Plaintiff also did not allege a claim for violation of the Retaliation Employment Discrimination Act. See N.C. Gen. Stat. § 95-241(a)(1)(b). Plaintiff did, however, allege "Plaintiff suffered the adverse employment actions . . . contrary to both state and federal law and in violation of North Carolina's established public policy prohibiting the discharge of an at-will employee when the employee's age is a substantial factor in the decision." (Doc. No. 64 at 12-13). Therefore, over Defendant's objection, the Court instructed, as requested by Plaintiff in his proposed instructions, on wrongful discharge in violation of North Carolina's public policy against discrimination against persons on account of age in the terms of his or her employment. (See Doc. No. 70 at 55).

the charge conference. Plaintiff did not file or submit instructions but orally requested the North Carolina patterned instructions on punitive damages. <u>See generally</u> Fed. R. Civ. P. 51(a). Plaintiff did not request or indicate which categories of evidence the jury should consider in determining the amount of punitive damages. <u>See</u> N.C. Pattern Jury Inst. – Civ. 810.98 (listing the categories of evidence that may be included in an instruction on the amount of punitive damages). The Court provided all counsel the revised jury instructions and verdict form, which included the punitive damages instruction, with sufficient time for counsel to review the changes. Upon reconvening and after inquiry from the Court, Plaintiff did not object to the jury instructions or move for the additional language on "the defendant's ability to pay punitive damages, as evidenced by revenue or net worth." Plaintiff also did not object during or after the reading of the jury instructions, as he did for other matters.[12] However, Plaintiff asserts the exclusion of the category "the defendant's ability to pay punitive damages, as evidenced by revenue or net worth" an error. Yet, Plaintiff has not cited any evidence in the record of Defendant's revenues or net worth that would justify such an instruction. Without evidence in the trial record of Defendant's revenue and net worth, the exclusion of the category on "the defendant's ability to pay punitive damages, as evidenced by revenue or net worth" is not a prejudicial error. Further, the jury instructions as a whole correctly stated the applicable law, so any omission is harmless. Therefore, the Court denies Plaintiff's request for a new trial.

### G. Plaintiff's Motion for Relief from Final Judgment or Order

#### 1. Racial Discrimination Claims

---

[12] Plaintiff in his Notice filed on February 23, 2018, after the trial, admits that the jury instructions properly state the purpose for punitive damages under North Carolina law. (Doc. No. 83 at 5).

Plaintiff contends the Court erred by dismissing Plaintiff's racial discrimination claims in response to Defendant's motion for summary judgment.[13] (Doc. No. 82 at 2). Plaintiff seeks relief from this Court's order granting summary judgment as to the racial discrimination claims pursuant to Rule 60 (Doc. No. 48) and a new trial under a mixed motive theory of race and age discrimination pursuant to Rule 59. (Doc. No. 82-1 at 11). However, Rule 60(b) does not permit the relief Plaintiff seeks. Plaintiff does not move pursuant to any of the specific reasons for relief under Rule 60(b), and the Court already ruled on the matters he seeks to reargue. "[R]ule 60(b) does not authorize a motion merely for reconsideration of a legal issue." United States v. Williams, 674 F.2d 310, 312 (4th Cir. 1982). When the court has already ruled on the matters raised in the Rule 60(b) motion, the motion is not proper. Id. at 313 ("Where the motion is nothing more than a request that the district court change its mind, however, it is not authorized by Rule 60(b)."); see also CNF Constructors, Inc. v. Donohoe Constr. Co., 57 F.3d 395, 400–401 (4th Cir. 1995) ("As we made clear in Williams, where a motion is for reconsideration of legal issues already addressed in an earlier ruling, the motion 'is not authorized under Rule 60(b)' "). Accordingly, Plaintiff's motion for relief from the summary judgment order is denied.

### 2. Fraud, Misrepresentation, or Misconduct by an Opposing Party

Plaintiff also moves for relief from final judgment for fraud, misrepresentation, or misconduct by the opposing party. (Doc. No. 82 at 5-6). "The party seeking 60(b)(3) relief must 'prove the misconduct complained of by clear and convincing evidence and demonstrate that such misconduct prevented him from fully and fairly presenting his claim or defense.'" McLawhorn v.

---

[13] As a result, Plaintiff also contends the denial of Plaintiff's motion to amend the complaint at trial to assert Plaintiff's mixed motive claim for disparate treatment on account of race and/or age and the refusal to instruction the jury on mixed motive claim for disparate treatment claims on the basis of race and/or age improper.

John W. Daniel & Co., Inc., 924 F.2d 535, 538 (4th Cir. 1991) (quoting Square Const. Co. v. Washington Metro. Area Transit Auth., 657 F.2d 68, 71 (4th Cir. 1981)).

In his motion, Plaintiff represents Defendant to have committed discovery abuses, tendered false affidavits, misrepresented documents, and asserted frivolous and malicious defenses. (Doc. No. 82). Plaintiff does not put forward evidence to support his representations of discovery abuses, misrepresented documents, and/or frivolous and malicious defenses but cites his previous filings before the Court. Plaintiff's reliance on his previously filings is clearly insufficient to meet his burden of proof, and Plaintiff neglected to show or explain how Defendant's alleged misconduct prevented Plaintiff from fully and fairly presenting his claim. The Court addressed the alleged discovery abuses made in Plaintiff's filings prior to trial. Specifically, Plaintiff, after discovery closed, moved for a second mediation, additional discovery, and sanctions. (See Doc. No. 11, 22, 27, 28). This Court heard Plaintiff on his complaints at a telephone conference on November 14, 2017. In response to Plaintiff's complaints, the Court stayed briefing of the summary judgment and promptly addressed them. The Court issued four orders. On November 15, 2017, the Court extended discovery to allow Plaintiff to depose six individuals that were untimely identified by Defendant, ordered all defendants to attend a second mediation, and ordered Defendant to produce its privilege log and all documents listed in the privilege log for in camera review. (Doc. No. 34). After in camera review, the Court ordered the production of two documents identified on the privilege log in a redacted form (Doc. No. 35) and ordered further certification or production by Defendant to comply with their discovery obligations (Doc. No. 37). Finally, the Court recognized the insufficiency of the testimony of Defendant's 30(b)(6) designee and ordered Defendant to make a sufficiently informed designee available to testify for one hour. (Doc. No. 39). The Court

also granted Plaintiff's request to amend his complaint to add claims under the ADEA based on the newly produced documents pursuant to the Court's order. (See Doc. No. 35, 43; Text-Only Order granting Doc. No. 43, Dec. 18, 2017). As Plaintiff did not move for reconsideration of the Court's summary judgment order in light of the new evidence,[14] move for a continuance of the trial to complete the permitted discovery, or move for additional discovery, the Court orders would appear to have cured any alleged misconduct prior to trial. In addition to the references to the filings, Plaintiff, at best, alleges the trial record evidences Tifani Grusky falsified her affidavit. However, Plaintiff has not put forward evidence or affidavits to substantiate this claim, and the trial record does not support an accusation of falsification. Grusky's failure to recall her method for calculating a figure in her affidavit does not, on its own, amount to evidence of falsification of an affidavit. Thus, Plaintiff plainly fails to carry his burden of proving misconduct by clear and convincing evidence and of demonstrating that such misconduct prevented him from fully and fairly presenting his claim.

### 3. Inadvertence, Surprise, or Excusable Neglect

Plaintiff also moves for relief from judgment under Rule 60 for Plaintiff's inadvertence, surprise, or excusable neglect for failing to present all the witnesses and exhibits he had listed on his pretrial filings within the time limits imposed. (Doc. No. 82 at 5). Plaintiff does not elaborate or address the proprietary of such relief for this conduct under Rule 60 in his brief or cite any

---

[14] Plaintiff claims "[s]ummary judgment was also inappropriate given the manner and timing of Defendants' recalcitrant discovery practices." (Doc. No. 82-1 at 15). Yet, discovery had closed, and the Court had addressed Plaintiff's discovery complaints. The Court had allowed further discovery prior to Plaintiff's deadline to respond to Defendant's summary judgment motion. Plaintiff did not seek an extension for the response deadline, request to supplement or file a surreply, file an affidavit under Fed. R. Civ. P. 56(d), or anyway apprise the Court that the remaining one hour deposition had not been held and needed to be held before the Court ruled on Defendant's motion for summary judgment. (See Doc. Nos. 34, 35, 37, 38, 39, 40). Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961-62 (4th Cir. 1996) (affirming grant of summary judgment where notice insufficient to inform the district court of the need for time to properly oppose summary judgment motion).

authority. As the Court has already determined that this occurrence or conduct does not amount to a miscarriage of justice, justifying a new trial under Rule 59(a), the Court sees no reason to address this matter further under Rule 60 when Plaintiff declines to substantiate his request. See also Moore's Federal Practice – Civil § 60.41 n. 16 (Matthew Bender 3d Ed.) ("Failure to prepare for trial is neglect, but it is never excusable neglect.").

### H. Plaintiff's Motion for Reasonable Attorney's Fees under N.C. Gen. Stat. § 1D-45

Plaintiff seeks attorney's fees "in accordance with N.C. Gen. Stat. § 1D-45 for Defendant's knowing assertion of frivolous or malicious defenses[.]" (Doc. No. 83 at 1). The relevant excerpt of the statute provides:

> The court shall award reasonable attorney fees against a defendant who asserts a defense in a punitive damages claim that the defendant knows or should have known to be frivolous or malicious.

N.C. Gen. Stat. § 1D-45.

> A defense is frivolous if "a proponent can present no rational argument based upon the evidence or law in support of [it]." Black's Law Dictionary 668 (6th ed. 1990). A defense is malicious if it is "wrongful and done intentionally without just cause or excuse or as a result of ill will." Black's Law Dictionary 958 (6th ed. 1990).

Rhyne v. K-Mart, Corp., 562 S.E.2d 82, 94 (N.C. Ct. App. 2002).

An award of attorney's fees under this statute is intended "to encourage professional peer review by limiting the possibility of unreasonable litigation expenses[,]" id., "while punitive damages are intended to punish a litigant for conduct that had already occurred by the time that the litigation had commenced[,]" Lacey v. Kirk, 767 S.E.2d 632, 650 (N.C. Ct. App. 2014). Hence, for an award of attorney's fees, the Court focuses on the conduct of the party during litigation. Knowingly and intentionally committing perjury on the stand on matters related to the punitive damages defense, Bryan v. Bryan, No. 1:11cv141, 2013 WL 1010481, at *1 (W.D.N.C. March 14,

2013), or persistently denying a fact alleged by plaintiff but then later confessing to such acts, Federal Point Yacht Club, Ass'n, Inc. v. Moore, No. COA15-92, 2015 WL 8755698, at *7-8 (N.C. Ct. App. Dec. 15, 2015) (unpublished opinion, disposition printed in reporter), justify an award.

Based on its findings in favor of Plaintiff on two of his Wage and Hour Act claims, the jury awarded Plaintiff $64,347.52 in punitive damages. The jury awarded Plaintiff $14,974.96 for his vacation time, paid time off, and/or extended leave and awarded $6,434.80 for bonus pay. (Doc. No. 74). As previously summarized, evidence supports the jury's finding. However, Defendant's defenses to these claims were not unwarranted in fact or law. Defendant's written policy on vacation pay, the uncertainty surrounding Plaintiff's employee classification after his removal from the Site Manager position in Charlotte, and the non-provision of labor for Defendant from the end of May to Plaintiff's anniversary date in July provided legitimate grounds for contesting the claims underlying the punitive damages award and the request for punitive damages itself. Additionally, given the ambiguous language in the 2014 Management Annual Bonus Plan, Defendant's defense to Plaintiff's entitlement to a bonus was not frivolous or malicious. As the Court finds Defendant's defenses[15] neither frivolous nor malicious, the Court denies Plaintiff's request for attorney's fees under section 1D-45.

### I. Plaintiff's Motion for Reasonable Attorney's Fees Pursuant to Fed. R. Civ. P. 37

Plaintiff claims entitlement to attorney's fees under Fed. R. Civ. P. 37 (a) through (e) (Doc. No. 84 at 10) and moves for an award of reasonable expenses, of $49,330.00 in billable fees and $5,635.97 in costs for his efforts. (Doc. No. 83-1 at 3-4, 11-12). Citing several previous filings, Plaintiff asserts that they demonstrate a litany of Defendant's transgression in discovery matters.

---

[15] Because Plaintiff did not prevail on or receive punitive damages on account of his other claims, the Court does not address Defendant's defenses to these claims.

(Doc. No. 84 at 10-11 (citing Doc. Nos. 26, 28, 29-1, 29-4, 32, 32-1, 32-7, 33, 34, 35, 36, 37, 38, 39)). As previously summarized, Plaintiff moved for a second mediation, an order compelling discovery, and sanctions on November 3, 2017. (See Doc. Nos. 11, 22, 27, 28). After the magistrate judge considered the matters and Plaintiff objected to the magistrate judge's determination, this Court heard Plaintiff on his complaints at a telephone conference on November 14, 2017 and orally ruled on several of the matters. As a result of Plaintiff's objection and the telephone conference, the Court memorialized its oral ruling and addressed the remaining matters in three other orders. All four orders modified the magistrate judge's order by granting in part and denying in part Plaintiff's objections. The Court acknowledged Defendant had failed to timely disclose or supplement as required by Rule 26(a) and (e), to produce non-privileged documents as requested under Rule 34, and to designate a prepared deponent able to answer questions as Defendant's designee under Rule 30(b)(6). (Doc. Nos. 34, 35, 37, 39). The Court then compelled production, designation of an informed designee, and production of the untimely identified witnesses for depositions. (Doc. Nos. 34, 35, 37, 39).[16] Thus, through these orders, the Court addressed in favor of Plaintiff matters pursuant to Fed. R. Civ. P. 37(a)(3)(A), (B) and (c)(1) through compelled discovery.

"Broadly stated, Rule 37 deals with the consequences of the failure to make discovery, and authorizes the imposition of sanctions in cases in which there has been an abuse of the discovery rules." Stillman v. Edmund Scientific Co., 522 F.2d 798, 801 (4th Cir. 1975). If a motion pursuant to Rule 37(a) compelling disclosure or discovery is granted, "the court must, after giving an

---

[16] The Court also ordered a second mediation for the Defendants' failure to comply with the Local Rule requiring all parties to attend mediation. Compare LCvR 16.2 with Fed. R. Civ. P. 37(b)(2) (listing sanctions for failing "to obey an order to provide or permit discovery").

opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, "the court must not order this payment if: the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; the opposing party's nondisclosure, response, or objection was substantially justified; or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). For a motion granted in part or denied in part, the court may "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Additionally, "if a party 'fails to provide information [or identify a witness as required by Rule 26(a) or (e)]' and the failure is not 'substantially justified or is harmless,' 'the court, on motion and after giving an opportunity to be heard,' 'may order payment of the reasonable expenses, including attorney's fees, caused by the failure.'" Brown v. Elliott, 876 F.3d 637, 645 (4th Cir. 2017) (quoting Fed. R. Civ. P. 37(c)(1)).

The burden falls on the petitioning party to demonstrating the reasonableness of both the rates and time charged. McAfee v. Boczar, 738 F.3d 81, 91 (4th Cir. 2013) (citing Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990). "To meet this burden, the fee applicant must document the need to have devoted the amount of time for which it seeks compensation." SunTrust Mortg., Inc. v. AIG United Guar. Corp., 933 F.Supp.2d 762, 774 (E.D. Va. 2013). Thus, "a fee claimant should set out with some specificity the different tasks performed and the hours allotted to each task[,]" Swann v. City of Goldsboro, 137 F.R.D. 230, 231 (E.D.N.C. 1990); see Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."), and "exercise billing judgment to excise . . . time not properly shown to have been incurred in pursuit of the matter at issue or that is otherwise not reasonable in

amount or not necessarily incurred[,]" <u>SunTrust Mortg.</u>, 933 F.Supp.2d at 774.  Employing billing judgment before requesting fees from the court is critical because the lodestar method is intended to "produce[] an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." <u>Perdue v. Kenny A. ex rel. Winn</u>, 559 U.S. 542, 551 (2010) (emphasis omitted).

The losing party, however, bears the burden of proving that the failure necessitating the motion was substantially justified.  <u>Proa v. NRT Mid. Atl., Inc.</u>, 633 F. Supp. 2d 209, 213 (D. Md. 2009).  "A legal position is 'substantially justified' if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" <u>Decision Insights, Inc. v. Sentia Group, Inc.</u>, 311 F. App'x 586 (4th Cir. 2009) (citing <u>Pierce v. Underwood</u>, 487 U.S. 552, 565-66 n.2 (1988)).

Because that the Court compelled discovery as requested by Plaintiff and found untimely disclosures through its four orders in November 2017, the Court concludes Rule 37(a)(5) and (c)(1)(A) provide authority to award reasonable expenses caused by the failure to disclose and reasonable expense in making the motion for an order compelling discovery, <u>see</u> <u>Stillman v. Edmund Scientific Co.</u>, 522 F.2d 798, 801 (4th Cir. 1975) (noting Fed. R. Civ. P. 37(a) provides for the recovery of "expenses incurred by the defendants in obtaining a discovery order").  Defendant had the opportunity to respond to Plaintiff's motion for attorney's fees under Rule 37 and to Plaintiff's supplement to his motion.  (<u>See</u> Doc. No. 83, 89, 93, 94, 95, 96).[17]  Defendant

---

[17] By providing Defendant the opportunity to file written submissions, Defendant has been heard on the matter as required under Rule 37 for an award of reasonable expenses.  Fed. R. Civ. P. 37(a) advisory committee's note (1993) ("Revised paragraph (4) is divided into three subparagraphs for ease of reference, and in each the phrase 'after opportunity for hearing' is changed to 'after affording an opportunity to be heard' to make clear that the court can consider such questions on written submissions as well as on oral hearings.").

did not argue that its position was substantially justified. Defendant instead takes issue with Plaintiff's billing records and argues that the time and expenses spent on Plaintiff's motion for sanctions should be deducted from any fee award as Plaintiff was not successful on that part of the motion. (See Doc. No. 96 at 4, 8). As Defendant does not contend substantial justification for its actions existed, the Court turns to Plaintiff's billing records to "determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir.2009).[18]

Counsel for Plaintiff attests that 113.60 hours of counsel time and 38.90 hours of his paralegal's time are "attributed to the efforts, correspondence, motions and orders necessitated by Defendant's abuses of pre-trial discovery, disclosures, the Case Management Order . . . and were necessarily incurred . . . in seeking to obtain and compel discovery and disclosures and in seeking to enforce the Court's orders regarding asserted discovery abuses." (Doc. No. 83-1 at 3). Then, after being ordered by the Court to support his claim with receipts, time entries for fees, affidavits, and/or authority to support the fees (Doc. No. 93), Plaintiff filed a breakdown of fees (Doc. No. 94-2) and the source for this break down, which consists of counsel's and his paralegal's entries into the time and billing system maintained in the regular course of business (Doc. No. 94-3). (Doc. No. 94 at 3-4). Although these filings provide additional information, they do not substantiate Plaintiff's request for fees for 113.60 hours of counsel time and 38.90 hours of paralegal time. The breakdown only has a general category of discovery/sanctions and the time entries consistently cover time spent on the multiple matters, including the summary judgment motions. As raised by Defendant, by employing block entries, counsel generally has not provided

---

[18] As evidenced in his filings and billing records, Plaintiff also made attempts to obtain discovery without Court intervention.

the Court reliable information from which the Court can determine what time was reasonably expended and or on what it was expended. See In re Olson, 884 F.2d 1415, 1428 (D.C. Cir. 1989) ("[D]eficient specifications make it impossible for the court to determine, with any degree of exactitude, the amount of time billed for a discreet activity where the lawyer in question billed for more than one activity in a day."); Project Vote/Voting for Am., Inc. v. Long, 887 F.Supp.2d 704, 716-17 (E.D. Va. 2012) (finding block billing inadequate to identify time associated for recoverable expenses and reducing time requested by percentage); Uzzell v. Friday, 618 F.Supp. 1222, 1226 (M.D.N.C. 1985) (same). Also, the general category of discovery/sanction is broader than the $49,330.00 in billable fees sought under Rule 37 by Plaintiff. Thus, neither the Court nor opposing counsel have the ability to determine how Plaintiff calculated the total of $49,330.00. Further, counsel's attestation admits that the $49,330.00 is for efforts "necessitated by" or "necessarily incurred." (Doc. No. 83-1 at 3). Such efforts as described by counsel are broader than the expenses "incurred in making the motion" under Rule 37(a)(5) and the expenses "caused by the failure" to disclose a witness under Rule 37(c)(1)(A). Finally, the applicable factors for reasonableness set forth in Johnson v. Georgia Highway Express Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) and adopted by the Fourth Circuit weigh in favor of a lower lodestar. See Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978). Although clearly meritorious, nothing briefed by Plaintiff in the motion is particularly novel or difficult and the sought fees are disproportionate relative to the amount in controversy and results obtained. Accordingly, the Court cannot award the fees as requested by Plaintiff and concludes a 30% reduction of the requested 113.60 hours is necessary. The Court finds this reduction avoids compensating Plaintiff for efforts

not "incurred in making the motion" under Rule 37(a)(5) or "caused by the failure" to disclose a witness under Rule 37(c)(1)(A).

Further reduction of the fee to account for time allocated to seeking sanctions is not appropriate in this case. As found by the Court and not disputed by Defendant, Defendant did not identify a witness as required by Rule 26(a) and (e).[19] Plaintiff could and did seek sanctions for Defendant's failure pursuant to Fed. R. Civ. P. 37(c). Although the Court did not impose the sanctions sought by Plaintiff, the Court, by reopening discovery to allow Plaintiff the opportunity to depose the untimely identified witnesses, ordered "other appropriate sanctions[,]" Fed. R. Civ. P. 37(c)(1)(C). Rule 37(c)(1)(A), thus, allows Plaintiff to now seek reasonable expenses for Defendant's failure, which would include the costs of the motion. Thus, the time spent working on the motion as a whole, to compel and for sanctions, is reasonably compensable under Rule 37(a)(5) and (c)(1)(A).

Based on its experience and its familiarity with this case, the Court also finds counsel's hourly rate of $400 reasonable. The hourly rate of $400 has been found by this Court and other courts to be within the range typically charged for litigation in North Carolina. Legacy Data Access, LLC v. Mediquant, Inc., No. 3:15-cv-00584-FDW-DSC, 2017 WL 6001637, at *20 (W.D.N.C. Dec. 4, 2017) (citing In re Newbridge Bancorp S'holder Litig., No. 15 CVS 9251, 2016 WL 6885882, at *14 (N.C. Super. Ct. Nov. 22, 2016)). Plaintiff also provided several affidavits supporting the reasonableness of this rate for this case. (See Doc. Nos. 83-1, 94-5, 95-6).

In contrast, as contended by Defendant, Plaintiff has not substantiated his request for paralegal fees despite the Court's order to support his requests for fees. (See Doc. Nos. 93, 96 at

---

[19] The Court cannot find time entries or expenses caused by the failure to timely identify witnesses beyond moving to compel and for sanctions, and Plaintiff has not identified any expense incurred as a result of this omission.

13-14). Many of the time entries for paralegal services show the provision of administrative services, such as the preparing of an appendix and processing documents. (Doc. Nos. 94-2, 94-3). Plaintiff also did not file an affidavit supporting the reasonableness of the requested paralegal fee. Thus, on this record, the Court cannot conclude that counsel's paralegal expended the requested time on professional legal services that required a legal training, as opposed to administrative work, or that the fees were reasonable. See Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC, 747 F.Supp.2d 568, 591, 593 (W.D.N.C. 2010); see also Sky Cable, LLC v. Coley, No. 5:11-cv-48, 2014 U.S. Dist. LEXIS 125134, at *15 (W.D. Va. Aug. 15, 2014) (citation omitted); USA Trouser, S.A. de C.V. v. Int'l Legwear Group, Inc., No. 1:11-cv-00244-MR-DLH, 2013 U.S. Dist. LEXIS 53822, at *2 (W.D.N.C. April 16, 2013). As Plaintiff failed to carry his burden, see Robinson, 560 F.3d at 244, the Court denies Plaintiff's request for compensation for 38.90 hours of paralegal time.

Plaintiff's counsel further attests that cost and expenses "related to the efforts and motions compelling discovery/seeking sanctions, and the subject of Orders related to pre-trial proceedings (including Rule 30(b)(6) depositions, court-ordered mediation, and necessary computerized legal research) is $5,635.97." (Doc. No. 83-1 at 4, 12). However, Plaintiff has not cited any basis under Rule 37 for a court award of costs for depositions, mediations, or legal research. The plain language of Rule 37(a)(5) only permits an award of "reasonable expenses incurred in making the motion" and none of the aforementioned expenses can be attributable to "reasonable expenses . . . caused by the failure" of Defendant to timely disclose witnesses under Rule 26(a) or (e).[20] See American Hangar, Inc. v. Basic Line, Inc., 105 F.R.D. 173, 175 (D. Mass. 1985) (declining to

---

[20] Plaintiff did not seek costs for or tender receipts for the deposition of the untimely identified witnesses.

award deposition costs where refusal to answer occurred prior to order compelling answers). Without any binding authority to support his request, the Court, relying on the plain language of Rule 37, declines to award these expenses.

### J. Clarification of Judgment

Federal Rule of Civil Procedure 60(a) allows courts to *sua sponte* "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." A mistake arising from oversight or omission may "occur[] when there is an inconsistency between the text of an order or judgment and the district court's intent when it entered the order or judgment" or "an unintended ambiguity that obfuscates the court's original intent." Sartin v. McNair Law Firm PA, 756 F.3d 259, 265–266 (4th Cir. 2014). The Court addresses herein a few matters where such a mistake has occurred.

First, the summary judgment order (Doc. No. 48) must be corrected to clarify the adjudication of claims against Chuck Brock, Donald S. Zeccardi, Malcolm C. Burchett, Tifani Grusky, and Michael Nail (collectively, the Individual Defendants) and their termination as parties. (Summary Judgment Hearing Tr. 41:18-22, Doc. No. 66). At the hearing on G4S and the Individual Defendant's Motion for Summary Judgment (Doc. No. 27), the Court orally ruled in the Individual Defendants favor on their summary judgment motion, resolving all claims against them and terminating them from this action (Summary Judgment Hearing Tr. 41:18-22, Doc. No. 66). At the time of filing of the written summary judgment order, the Court had granted Plaintiff's Motion to Amend Complaint, which ambiguously used the term Defendants. (See Doc. No. 48 at 28 n.9). However, the Court struck the initial amended complaint because as filed, it was without the consent of Defendant or the permission of the Court. (Doc. Nos. 53, 63). Plaintiff filed its

third amended complaint (Doc. No. 64), which clearly established that the new cause of action only complained of acts by the remaining Defendant G4S. Therefore, the Court clarifies its intent and the record to reflect that Individual Defendants were terminated from this action when the Court granted summary judgment in their favor on all remaining claims asserted against them. Thus, the Court strikes footnote 9 from the written summary judgment order filed on December 21, 2017 (Doc. No. 48) and directs the Clerk of Court to appropriately reflect the termination and judgment of the Individual Defendants on the record.

Second, the Court must consider amendments to the judgment to reflect prejudgment and post judgment interest.[21] The NCWHA entitles Plaintiff, as the prevailing party on claims under the Act, to "interest at the legal rate set forth in G.S. 24-1 from the date each amount [awarded by the jury] first came due." N.C. Gen. Stat. § 95-25.22(a). As the jury found Plaintiff entitled to $6,434.80 and $14,974.96 as of August 26, 2016, Plaintiff is entitled to prejudgment interest on $21,409.76 at North Carolina's legal interest rate of 8% per annum, N.C. Gen. Stat. § 24-1. Therefore, the Court amends the judgment herein to reflect $2,435.58 in prejudgment interest. In accordance with 28 U.S.C. § 1961, the Court also amends the order to reflect post judgment interest at the federal rate on the awarded compensatory damages, punitive damages, prejudgment interest, and attorney's fees.

---

[21] The Court ordered Plaintiff to address these matters in supplemental filings and provided Defendant the opportunity to file a response. (Doc. No. 93). Plaintiff filed a supplement (Doc. No. 95), but Defendant declined to respond.

### III. CONCLUSION

IT IS THEREFORE ORDERED that for the reasons explained above:

1. "Defendant G4S Secure Solutions (USA) Inc.'s Motion for Judgment as a Matter of Law, or in the Alternative Motion to Alter or Amend Judgment or for a New Trial" (Doc. No. 80) is DENIED.

2. "Plaintiff's Motion for Judgment as a Matter of Law (Rule 50)" (Doc. No. 81) is DENIED.

3. "Plaintiff's Motion for New Trial and for Relief from Judgment or Order Fed. R. Civ. P. 59(b), (e), and 60(b)" (Doc. No. 82) is DENIED.

4. Plaintiff's "Motion for Reasonable Attorney's Fees (and Allowable Costs) under N.C. Gen. Stat. § 1D-45 and Fed. R. Civ. P. 37" (Doc. No. 83) is DENIED IN PART and GRANTED IN PART. Plaintiff's motion under N.C. Gen. Stat. § 1D-45 is denied, but the Court grants Plaintiff's motion under Fed. R. Civ. P. 37 and awards Plaintiff attorney's fees to the extent of $31,808.00.

5. The Order entered on December 21, 2017 (Doc. No. 48) is amended by striking footnote nine. The Clerk of Court is directed to update the docket and enter judgment against the Individual Defendants accordingly.

6. To reflect prejudgment interest, attorney's fees, and post judgment interest awarded herein, the Court amends the judgment to provide: Plaintiff shall recover from Defendant the amount of $120,000. 86, with interest accruing from January 26, 2018 until satisfied at the statutory rate provided in 28 U.S.C. § 1961.

IT IS SO ORDERED.

Signed: June 7, 2018

Frank D. Whitney
Chief United States District Judge